## Thiele v. Citizens' Railway Company, *Appellant.*

### Division One, June 22, 1897.

1. **New Trial:** STATEMENTS IN AFFIDAVIT FOR CONTINUANCE. Defendant in its application for a continuance set out the testimony of two witnesses and stated that it knew "no other person by whom such facts could be proven or so fully proven," and at the trial its other witnesses testified to the same facts set forth in the application, which plaintiff had consented might be read to the jury as reciting the facts to which the absent witnesses would testify if they were present. The trial resulting in a verdict for the defendant, plaintiff asked that a new trial be granted him on the ground that he was entrapped into said agreement by the promise therein that defendant knew no other person by whom he could prove such facts. *Held,* that the trial court erred in granting a new trial on this showing.

2. ———: ———: EVIDENCE. A party can read in evidence the facts set forth in an application for a continuance, which the oppositive party has agreed may be read as embodying the facts to which the absent witness would testify if he were present, and also may prove the same facts by other witnesses, although in his application he has stated he knows no person by whom he can prove the same facts.

3. **Reading Application for Continuance to Jury.** Only that portion of the application for a continuance that sets forth the facts to which the absent witness would testify if present, should be read to the jury.

4. **Continuances:** AFFIDAVIT OF SURPRISE. If a litigant has been entrapped and cheated by the statement in the application of the adversary for a continuance that he could not prove recited facts by any other person, he should make known his surprise at the time the fraud is perpetrated.

5. ———: AFFIDAVIT OF SURPRISE. A party can not be surprised at the introduction by his adversary of any evidence within the issues made by the pleadings, even though such testimony is false.

6. **New Trials:** OVERRULING OTHER GROUNDS. The trial court having sustained the motion for a new trial on one ground assigned, necessarily overruled the other assignments.

*Appeal from St. Louis County Circuit Court.*—Hon. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED *(with directions)*.

*Smith P. Galt* for appellant.

(1) Defendant's affidavit for continuance strictly followed and complied with the provisions of the statutes of Missouri in such case made and provided. R. S. 1889, secs. 2124, 2126, 2127. (2) The court decided said motion was sufficient and complied with the law, when presented to the court, and on the motion for a new trial the court holds the same was sufficient, but the same "was not supported by the facts as appeared by the evidence adduced at said trial." (3) The said motion and affidavit, being preliminary to the trial and not part of it, and the only question to be determined thereby being whether the defendant shall have a continuance or be forced to a trial by the plaintiff, the affidavit is not required, under the law, to be "supported by the facts as the same appear by the evidence at the trial;" but all that is required is that it shall appear that the affidavit itself is "sufficient," that is, that it "contains a sufficient statement of facts as herein required." R. S. 1889, sec. 2127. (4) The statute contemplates that a party to the suit shall have the evidence of all the witnesses that he deems necessary to support his cause of action, or defense, as the case may be, and no party would jeopardize his case by making an affidavit for continuance, if after the trial a verdict is to be set aside and the cause determined by a comparison of the affidavit with the entire evidence of both sides in the case, adduced at that trial. (5) The court, in its disposition of the motion for new trial, did not hold that the affidavit was false or fraudulent,

as alleged in the motion for new trial, but merely that it was not "supported by the facts as they appeared by the evidence."

*Kinealy & Kinealy* for respondent.

(1) It is well settled law in this State that the granting of a new trial is a matter that is largely within the discretion of the trial court, and before an order sustaining a motion for a new trial will be reversed it must be made plainly to appear that the court abused its discretion in making that order. *Bank v. Armstrong*, 92 Mo. 265; *McKay v. Underwood*, 47 Mo. 187; *McDonough v. Nicholson*, 46 Mo. 35; *Eidemiller v. Kump*, 61 Mo. 342; *McCullough v. Phoenix Ins. Co.*, 113 Mo. 606. (2) This court in passing upon the question as to whether or not error was committed will look not only to the reason set forth in the record by the trial court as the ground upon which it sustained the motion for a new trial, but also to the motion itself, and if the action of the trial court in granting a new trial can be sustained either upon the ground given by the court as its reason for sustaining the motion, or upon any of the grounds set forth in the motion for a new trial, the judgment will be affirmed. *Lovell v. Davis*, 52 Mo. App. 342; *Hewitt v. Steele*, 118 Mo. 463. If the court committed error to the prejudice of plaintiff in holding that the defendant was entitled to a continuance unless the plaintiff admitted that if the absent witnesses were present they would testify to the facts set forth in that affidavit, then it was certainly justified in undoing that error by sustaining the motion for a new trial. *State v. Maddox*, 117 Mo. 667; *State v. Banks*, 118 Mo. 117; *State v. Howell*, 117 Mo. 307; *State v. McCoy*, 111 Mo. 517; *State v. Dettmer*, 124 Mo. 426; *State v. Good*, 33 S. W. Rep. 790; *Freleigh*

v. *State*, 8 Mo. 608; *Bartholow v. Campbell*, 56 Mo. 117; *State v. Simms*, 68 Mo. 305; *State v. Lett*, 85 Mo. 52. (3) Having taken the position that it had no witnesses except the absent ones who could testify to the facts set forth in the affidavit, defendant will not be allowed to afterward take the contrary position that it had four such witnesses. Bigelow on Estop. [5 Ed.] 673, 717; *Brown v. Bowen*, 90 Mo. 184; *McClanahan v. West*, 100 Mo. 309; *Tower v. Moore*, 52 Mo. 118; *Smiley v. Cockrell*, 92 Mo. *loc. cit.* 112; *Bensieck v. Cook*, 110 Mo. 173.

ROBINSON, J.—This is an action to recover damages for personal injuries sustained by plaintiff on account of the alleged negligence of the servants and employees of the defendant company in managing and operating one of its trains of cars. The suit was brought in the circuit court of the city of St. Louis, and the cause was removed by change of venue to the St. Charles county circuit court. The answer, after admitting that defendant was a corporation operating a cable street railway along Franklin avenue in the city of St. Louis, is a general denial coupled with a plea of contributory negligence. The issue was joined by reply. The case was tried before a jury who rendered a verdict in favor of defendant.

Plaintiff in due time filed his motion to set aside the verdict and for a new trial, assigning the following grounds therefor:

"*Because* the court erred in ruling that the affidavit for a continuance presented by the defendant was sufficient, and erred in overruling plaintiff's objections thereto and in compelling plaintiff to elect as to whether or not he would proceed to trial thereon.

"*Because* the affidavit for a continuance filed by the defendant herein was false, as a matter of fact, and

was shown so to be by the testimony on behalf of the defendant on the trial of the cause.

"*Because* the filing by the defendant of the affidavit for a continuance was a mere trick, device, and fraud on the part of the defendant for the purpose of compelling a continuance of the cause, or else that plaintiff would admit that the persons named in said affidavit would testify as to the facts therein stated.

"*Because* the plaintiff consented that the statement of Lerous and Robinson, as set forth in said affidavit, might be read to the jury in lieu of their testimony on the faith of the statement, in 'said affidavit contained, that the defendant knew of no other person by whom he could prove said facts, and said statement in said affidavit was untrue, and thereby plaintiff was entrapped into said admission and was deceived and wronged by said untrue statement in said affidavit.

"*Because* the verdict of the jury was procured by the use by the defendant of the said untrue and false affidavit for a continuance.

"*Because* the plaintiff was surprised by the defendant introducing witnesses to testify to the same facts, as set forth in the affidavit for a continuance, as the testimony of said Lerous and Robinson.

"*Because* the defendant practiced a fraud on the plaintiff by means of and use of a false affivadit for a continuance.

"*Because* the verdict in this case was procured by the fraud of the defendant by means and use of the said false affidavit for a continuance.

"*Because* the court erred in refusing to sustain plaintiff's motion to strike out certain portions of the testimony of the witnesses for the defendant on the trial.

"*Because* the court refused to admit competent and legal evidence offered by the plaintiff.

"*Because* the court admitted illegal and incompetent evidence offered by the defendant.

"*Because* the court gave to the jury illegal and improper instructions asked by the defendant.

"*Because* the verdict of the jury was against the evidence and against the weight of the evidence.

"*Because* the verdict of the jury was procured through fraud and deception practiced by the defendant on the trial of the case.

"*Because* the verdict of the jury should have been in favor of the plaintiff, and against the defendant."

The motion for new trial was sustained, and the verdict was set aside. The ground upon which the trial court sustained the motion, as shown by the record, was "that defendant's affidavit for a continuance, filed on the day of the trial of this case, was not supported by the facts as appeared by the evidence adduced at said trial." Whereupon defendant appealed to this court, complaining of the action of the trial court in setting aside the verdict and granting a new trial.

The petition charges: "That on the 21st day of September, 1893, plaintiff was on the corner of 21st street and Franklin avenue, in said city, at a place where it was usual and customary for defendant's trains to stop to take on and discharge passengers; that desiring to take passage on one of defendant's trains passing westwardly along said Franklin avenue, he stood in proper position, and as one of said trains approached from the east plaintiff in due time signaled to the motorman in charge of said train to stop the same in order that plaintiff might take passage thereon; that said motorman saw plaintiff and received said signal and immediately began to stop said train, and when said train had been brought almost to a stop and was running very slowly, plaintiff took hold of one of the upright roof supports of the grip car of the said train,

and proceeded to get upon said car, and while plaintiff still had hold of the same as aforesaid, the said grip-man without any warning or notice to plaintiff, negligently and carelessly, and with a violent jerk and jar, suddenly started said train forward and suddenly increased the speed thereof, and because of said jerk and jar and sudden starting aforesaid, plaintiff was without warning violently jerked and thrown to the ground, and his left leg fell under said car, and the wheels thereof passed over the same, whereby plaintiff's lower left leg and foot were badly crushed, mangled, and broken.''

When the case was called for trial, defendant presented his application for a continuance, on the ground of the absence of two witnesses, Alexander Lerous and Philip Robinson. The affidavit for continuance, after setting forth what particular facts the absent witnesses would testify to, states that ''affiant knows of no other person by whom the same facts can be proved or so fully proved as by the absent witnesses.'' The circuit court holding the affidavit sufficient, plaintiff, in order to avoid a continuance, admitted that the witnesses, if present, would testify to the facts set out in the application, whereupon the court overruled the application and the trial proceeded.

Plaintiff testified in his own behalf as follows:

''I am the plaintiff in this case. On September 19th, 1893, I was working in a grocery for my brother, John Lienhop, at Twenty-third street and O'Fallon. I was hurt by the Franklin avenue line on Monday, the 19th of September, 1893. Mr. McGooldrick was with me at the time. We walked to 2105 Franklin avenue, Lewis Schwartz's saloon, took one drink of beer there. We then went outside on the sidewalk, talked together and waited for a car for two or three minutes. Don't remember whether I took the first car that came along

or not. We were standing not more than fifty feet from the west corner of Twenty-first street. I first saw the car between the east and west crossing. I went across the way over to the track, on Twenty-first street. I went over and hailed the car. I went over towards the track. There is only one track on Franklin avenue and the cars run west upon it. It is a cable road. Train consisted of two cars, one front car a grip, and the other a trailer. The grip was an open car, ain't positive about the trailer. I did not get so very close to the car. The trailer had not crossed the west crossing when I hailed the gripman. When I hailed him he slowed up. Train slackened its speed. No one got on at that place besides me, that I know of. I had walked out on the street to within three or four feet of the track when I hailed the gripman, and did not move from there until the car was right in front of me. I don't know. I got no idea how fast the car was running. It had slackened its speed. It was not running too fast for anybody to get on. I got hold of the handle, the upright bars, and as soon as I got hold of the handle the bell rang and it gave a sudden jerk and threw me on the ground; I guess the bell rang from the trailer. I undertook to get on about the middle of the car. When the bell rang the gripman pulled up the rope again and let the brake fall, and it gave a terrible jerk, and the car started off right fast. The effect was, that I was on the ground because I hadn't my foot on the board yet. I had hold of the handle and a sudden jerk threw me down. I hadn't my foot on the side board yet. I was run over, over the ankle. They carried me into a drug store, and Dr. Brokaw was called and attended me, and then they called an ambulance and they took me home. Dr. Brokaw was called and treated me. Dr. Bradley attended me until June, 1894. Dr. Pinn, an assistant

of Dr. Brokaw, also attended me. It was Monday I was hurt and I remained home until next Saturday when I was taken to the St. Louis Hospital, and remained there six weeks, and went home then. When I got home the pain was enough to kill anybody, and it continued for about six week or two months. I had to take morphine. I first got up on the 1st of January and had to go on crutches until the first of June. After the first of June I was able to get around myself. On the 1st of November, 1894, I went back to work again at my brother's, John Lienhop's. At the time of the accident I was earning $30 per month and board. After I went back to work at my brother's, he paid me $25 per month. I don't know whether I earned that. My ankle was stiff and the toes are stiff, and there is a shortening of my leg, about two inches. I was not drinking any liquor at the time of the accident. I was drinking beer. I can't say how many glasses I had taken at the time of the accident. I was able to take care of my business, or I would have been discharged by my brother."

Cross-examination:

"I hadn't taken any whiskey the day of the accident. How many glasses of beer I had taken, I can't remember. There was a saloon connected with my brother's grocery. The reason I went to 23rd and Franklin avenue that night, was that I wanted to see my friend Schwartz. It was after eight o'clock at night. McGooldrick and I went out to the track to take the car, about fifty feet west of 21st street. They were tearing down a house there, and there was a pile of brick in the street from four to four and one half feet high. The pile of brick and debris extended out from the pavement, maybe six feet. We were about two or three feet from where it extended out to about seven or eight feet from the track. We were on the

west side of the pile of brick. I could not say how fast the car was going when I grabbed hold of it. I had held up my hand as a signal. I know the car was going very slow. As soon as I got hold of the car it started up, and as I grabbed hold of it the car plunged forward and I went down. It was so short a time after I grabbed it, that I did not have time to raise my foot and pull it on the running board. I don't know whether the gripman saw me fall or not. I did not have any particular reason for not going down to the corner to get on the car where persons usually get on. I have gotten on before at 21st and Franklin avenue. I never got on before at that exact point. I didn't see any other passengers get on or off the car there. I did not come running up with both hands out to grab hold of the car when it was running at full speed. After I fell the car ran about 125 feet before it stopped, about the middle of the block."

Re-direct examintion:

"I never got on at that same place before. I have gotten on in front of 2103. I don't know that I ever got on before while that pile of brick was lying there."

Then followed the testimony of several other witnesses, called by plaintiff, substantially corroborating his version as to the manner of the occurence of the injury, etc.

At the close of plaintiff's case defendant read in evidence the statement of the absent witness Lerous and Robinson, as set out in the affidavit for continuance, as follows:

"My name is *Alexander Lerous*. In September, 1893, I lived in the city of St. Louis. I was a passenger on the train when the plaintiff Thiele got hurt. I was on my way home. It was between 8 and 9 o'clock at night. I was sitting on the grip car. The accident

occurred about the middle of the block, west of Twenty-first street. Maybe it was east of the middle of the block, I can not tell exactly, but it was some distance west of Twenty-first street. As the train was going along at the usual speed, this man that got hurt came out from beyond a mortar pile in the street. He made no motion for the car to stop, and he grabbed the grip car about the middle, and instantly fell or was thrown down. The gripman stopped the car very quick. The train had not stopped at twenty-first street nor had it stopped for this man to get on, but while it was in motion he caught the car. He seemed to me to be under the influence of liquor. The train did not slow up and then start again as Thiele was getting on.''

''My name is *Philip Robinson*. The man Thiele came around the mortar pile west of Twenty-first and Franklin avenue. Man did not wave or do anything else to indicate that he wanted the car to stop. He grabbed at car and could not hold on and fell. It was done so quick. The man tried to get hold about the center of the grip car, north side. Man grabbed with both hands, but caught hold only with left hand. It turned him around and he fell flat. Gripman saw the man the same time as I did. He at once grabbed for the brakes and stopped very quickly. I was sitting on last single seat right alongside of the gripman, and the man grabbed the seat or post at the end of the seat ahead of me. I jumped down, but the crowd was too much for me to see him or get near him. It was about 75 or 100 feet west of the crossing where he jumped on, or attempted to get on. . One can not exactly tell the distance when he is on the train that is going, and it all occurred so quick. I did not see the man until he made for the car. The gripman applied both brakes, as the man grabbed for the car, but it was too short a time, and too sudden for the gripman to stop. The

cars did not stop at Twenty-first street, and were not stopped when this Mr. Thiele tried to grab hold, but were in full motion. I have often rode on the Citizens' line, and have watched the gripmen stopping the cars, and know how it is done, and in what time the cars can be stopped, and I know that no person could have stopped that train quicker than the gripman did. The gripman was looking ahead attending to his business. It was after 8 o'clock in the evening on last September. I gave my name to the conductor after the accident. When I saw the man making for the car, I thought by his actions that he was intoxicated."

The defendant then introduced J. E. Roberts and W. F. Steinkamp, passengers on the train at the time of the accident, who also testified to the same effect substantially.

Nathaniel Lewis, the gripman, and Martin Schreiner, conductor, testified as follows:

"I was the gripman on this car at the time of the accident. When we crossed Twenty-first street I saw this man coming off the sidewalk in front of the saloon, I think its number is 2105. As he came off of the sidewalk I saw he was going to grab the car and I put my brakes on, and he fell. I was running at full speed. There was no one with him when he came out from the pavement to the car. He made no signal to me whatever to stop or slow up before he grabbed the car. When the train stopped he was lying about ten feet behind the trailer. I did not stop at Twenty-first street, or slow up there."

Cross-examination:

"We all talked about this case on the way out here. I think I made a statement to Mr. Rechtine the day after the accident. The trailer was an open car. I got no signal from anybody at Twenty-first street to stop. I saw no one standing on the crossing

as we went by. The conductor rang the bell when I was stopping, after plaintiff had grabbed the car, about the time he fell. I thought the man was under the influence of liquor. He came at the car like any man would do that was in a hurry. He was in a kind of a rush. Nobody was with him. Nobody was talking to him. I grabbed my brakes. When he went to jump at the car, he was reaching for a standard. I did not slacken the speed of the train, when I saw him run out from the sidewalk, because I did not know exactly whether he was going to get on the car then or not. I did not know but he was going to untie the horse that was tied to the telegraph pole."

Re-direct examination:

"My train was number 33. The trailer was an open car."

"*Martin Schreiner:* I was the conductor on the train on which this man was hurt. The trailer car was an open summer car, which was on the rear end of the trailer. I saw this man when he came out from behind the mortar box. I saw him dodging outside of the mortar box in a pretty fast walk, and he grabbed hold of the standard, and I don't know whether he missed it or not. The last half of the coach ran over his foot. The train, when he grabbed for it, was going at the rate of eight or ten miles an hour. While the accident was happening, the gripman pulled his brakes, and I gave three bells to stop, and when the train stopped, the man was about twenty-five feet behind the trailer. The train did not slow up at all just as this man was getting on. He made no signal whatever. I did not see anyone with him. There was no one with him."

Cross-examination:

"It appeared to me that he was under the influence of liquor. I could smell it on him when he was carried into the drug store. I thought it was whisky.

We did not stop on 21st street or slow up there, and took no passenger on there. I rang the bell to stop, because I saw that plaintiff was likely to be hurt. I know the gripman was then stopping the car, by the motion of the car. I was on the rear end of the trailer. Was about fifty feet west of 21st street. I did not see him when he first started from the sidewalk. I saw him first when he came from outside the mortar box. I gave the signal as he reached for the standard. It was between eight and nine o'clock at night. This mortar box is about five feet from the track. The car ran about thirty feet after it ran over him. Twenty-five or thirty feet is the shortest time in which a train can stop. The gripman began to stop or put on his brakes while the plaintiff was grabbing the car.''

At the conclusion of the testimony of the witness Roberts, plaintiff moved to strike out his evidence on the ground that he had testified to the same facts set out in the application for continuance filed by defendant, and further because it was stated in the application that defendant knew of no other person by whom the same facts could be proven, as by the absent witnesses. This motion was overruled and thereupon counsel for plaintiff over defendant's objection, was permitted to read the entire application.

In the view we take of the questions involved in the present appeal, and further that no specific error is pointed out in the instructions given, we deem their insertion here unnecessary.

It is contended by the defendant that the circuit court erred in setting aside the verdict and granting a new trial on the ground specified in the order for a new trial based on the record ground of the motion, which is that ''defendant's affidavit for a continuance was not supported by the facts as appear by the evidence adduced at said trial.''

By section 2126, Revised Statutes 1889, it is pro-
vided that a party applying for a continuance should
state in the application therefor, among other things,
"what particular facts the affiant believes the absent
witnesses will prove, and that he knows of no other
person whose evidence or attendance he could have
procured at that term, by whom he can prove or so
fully prove the same facts." Section 2127 provides
that: "If the court shall find the affidavit sufficient,
the cause shall be continued, unless the opposite party
will admit that the witness, if present, would swear to
the facts set out in said affidavit, in which event the
cause shall not be continued, but the party moving
therefor shall read as the evidence of such witness the
facts so stated in such affidavit, and the opposite party
may disprove the facts disclosed or prove any contra-
dictory statements made by such absent witness in
relation to the matter in issue and on trial." Yet it
has never been held in this State nor elsewhere, so far
as we have been able to discover, that where, as in
this case, the defendant applies for a continuance on
account of the absence of certain witnesses, setting out
in the application the particular facts it is expected to
prove by the absent witnesses, and counsel for the
opposite party, in order to avoid a continuance, ad-
mitted that the witnesses, if present, would testify as
stated in the application, that defendant would be pre-
cluded from proving the same facts by other witnesses
at the trial, or facts and circumstances from which the
same inference might be drawn, in the consideration
of the case in its entirety.

Where the trial court has held the application for
continuance sufficient, and the opposite party has
forced a trial by admitting that the absent witness
would, if present, swear to the facts set forth in the
affidavit, then the portion of the affidavit which relates

to the evidence of the absent witness may be read to the jury. But we know of no principle of law or statute that would preclude the party so applying from proving the same facts by other witnesses. To hold otherwise would, in most instances, deprive the applicant of much testimony to which he is legitimately entitled. Besides, it would work a great hardship on the party applying for a continuance, if such was the rule.

If this provision is to be interpreted according to the contention of the respondent, and as indicated by the order of the trial court, its invocation by the litigant would be attended with such uncertainty and hazardous results as to rob it of all practical utility. However much one might feel the necessity of the testimony of an absent witness, which he at a given term of court is unable to get, and which this statute clearly contemplated he is entitled to have by way of a sworn statement as to what his testimony would be, provided the adverse party shall insist on an immediate hearing of the cause, he could not afford to proceed with the trial of the case, using such statement, and taking the chances of being defeated, and knowing that if successful in getting a verdict in his favor, that it would be set aside, by the trial court, upon its determination after verdict that the affidavit as made to authorize the use of such statement, was not supported by the testimony of some other witness in the case. In other words, that some other witness had testified to substantially the same state of facts, as it was agreed the absent witness would testify to if present.

The defendant was entitled to have that portion of the affidavit relating to the testimony of the absent witnesses read to the jury. But it does not follow, by any manner or means, that he could not prove the

same facts on the trial by other persons, and this has always been the practice.

The statutory provisions above adverted to are, at best, but a mere substitute for oral testimony. Clearly the statute does not contemplate that the application must be "supported by the evidence adduced on the trial of the case." This position is absolutely without any foundation, either in reason or authority.

After a thorough search we have been unable to find any authorities warranting the trial judge in granting a new trial on the ground specified in the order of the court. The authorities cited by counsel for respondent do not touch the question.

In our opinion the circuit court erred in setting aside the verdict and granting a new trial on the ground specified in the order. Counsel for plaintiff, however, contends that the action of the court below ought not to be reversed for the reason that the court may have been warranted in granting a new trial upon some of the grounds stated in the motion other than the one upon which it based its action. . The trial court having sustained the application for a new trial on the second ground assigned in the motion, necessarily overruled the motion as to the other grounds therein contained. *Bradley v. Reppell*, 133 Mo. 545.

In the recent case of *Ittner v. Hughes*, 133 Mo. 679, this division, speaking through BARCLAY, J., said: "If, however, the party in whose favor the order for a new trial goes, can make it clear, from the record brought up (on his adversary's appeal) that that order was right, for reasons (assigned in his motion) other than those on which the trial judge based the order, he may then secure an affirmance, on the general principle that an appellate court should always sustain a correct result though it may have been brought about by an erroneous process of reasoning."

As the entire motion for a new trial and the action of the court upon it appears in the record brought up by defendant, we will proceed to the consideration of the question whether the order of the court granting a new trial can be sustained on any one of the grounds contained in the motion.

The first ground of the motion is the alleged insufficiency of the affidavit for a continuance. When the case was called for trial defendant filed an application for continuance. The application was in regular form setting out in detail the diligence used in securing the attendance of the witnesses and amply authorized the court in holding that the application was sufficient in law, and would have resulted in a continuance had not plaintiff, under the provisions of the statute referred to, admitted that the absent witnesses, if present, would swear to the facts set out in the affidavit. This admission forced the defendant to trial. As there was no error in holding the application sufficient, the first ground of plaintiff's motion can not be sustained.

The third, fourth, fifth, seventh, eighth, and fourteenth grounds assigned by the motion may be classed together, and relate to the alleged fraud in procuring the admission touching the testimony of the absent witnesses. They are entirely unsupported by proof. Besides, we fail to find in this record any foundation whatever for the grounds referred to. From the plaintiff's own showing it appears that no trick, fraud, or misrepresentation was practiced upon him or his counsel to obtain the admission that the absent witnesses would testify to the facts set out in the affidavit. The cause would have been continued on defendant's application had not counsel for plaintiff forced defendant into trial by the very identical admission complained of. The mere fact that plaintiff's counsel made the

admission that the absent witnesses, if present, would testify to the facts stated in the affidavit for a continuance under an erroneous view of the applicatory law, supposing that the defendant would thereby be confined wholly to such admissions and precluded from corroborating or adding to such statutory evidence, would not warrant the court in granting a new trial. The defendant had the undoubted right, notwithstanding such admission, to corroborate such statutory evidence at every point, either by oral testimony as to the facts, or any additional fact or circumstance legitimately bearing on the issues.

The sixth ground of the motion assigns the surprise of the plaintiff by the testimony of John E. Roberts, W. F. Steinkamp, Nathaniel Lewis, and Martin Schreiner, the first two named witnesses having been passengers riding on the grip car at the time of the accident, and the latter conductor and gripman, respectively, in charge of the car.

When counsel for defendant came to put in his evidence he read to the jury that portion of the application for continuance which set out the matters which would be testified to by the absent witnesses if they were present. This was followed by the testimony of the witnesses Roberts, Steinkamp, Lewis, and Schreiner. At the conclusion of the testimony of the witness Roberts, plaintiff's counsel moved to strike out his evidence on the grounds that he testified to the same facts substantially as set out in the affidavit, which motion at the time was overruled. Whereupon plaintiff's counsel, over the defendant's objection, asked and was permitted to read the entire affidavit. Where the application for a continuance is held sufficient and defendant is forced to trial by plaintiff's admitting that the absent witnesses would, if present,

swear to the facts which the affidavit alleges they would testify to, then only that portion of the affidavit which related to the testimony of the absent witnesses can be read to the jury on trial. That portion of the application relating to the diligence used in securing the attendance, as well as the particular facts the witnesses were expected to swear to, is more particularly addressed to the trial court, and is wholly immaterial to the issues being tried. But as no complaint was made of the court's action in that regard, we will proceed with the discussion of the alleged surprise.

It will be observed that at no time during the trial did counsel for plaintiff profess any surprise at the testimony of said witnesses or suggest to the court that he was not prepared to meet it, or ask for any delay because of the action of the court in admitting such testimony. The sole objection made to the testimony at the time was that the same facts had been shown by the statements of the absent witnesses that had been read. Indeed, the alleged surprise seems not to have manifested itself until after the jury had brought in a verdict for the defendant. Even then no supporting affidavit is filed.

It is a general rule that each party must understand his case and come prepared to meet the case made by his adversary; therefore, a party can not be surprised that his adversary introduced testimony in support of the issues made by the pleadings, even though such testimony is false. (Hayne's New Trial, par. 79.) The rule is thus forcibly stated by PHILLIPS, P. J., in *Bragg v. City of Moberly*, 17 Mo. App. 221: "If a party be surprised by an unforeseen occurrence at the trial, he should make his misfortune known to the court instantly and ask for a reasonable postponement to enable him to produce the countervailing proof. If he can relieve himself from his embarrassment by

any mode, either by a nonsuit or a continuance, or the introduction of other testimony, or otherwise, he must not take the chance of a verdict, but must at once fortify his position by resorting to all available modes of present relief." Recognizing the rule thus laid down, the motion can not be sustained on the sixth ground.

As to the ninth, tenth, and eleventh grounds assigned, they are without the slightest merit. The twelfth ground challenges all the instructions given on behalf of the defendant, but no specific error is pointed out. We have read the instructions carefully and they are such as have been frequently approved by this court.

The thirteenth ground assigns the insufficiency of the evidence to support the verdict. A careful consideration of the evidence convinces us that it was sufficient, if believed by the jury, to support the verdict, and in such a case it is neither our duty nor desire to interfere with the verdict. It is equally clear that the motion could not have been sustained on the fifteenth ground.

It results from what has been said that the order of the circuit court granting a new trial can not be sustained for the reasons specified of record by the court, or on any one of the grounds contained in the motion. The order of the court will therefore be reversed and set aside and the cause remanded to the circuit court with directions to reinstate the verdict and enter up judgment thereon accordingly. All concur.