Robert W. KEYTE, Respondent,

v.

Roy Jefferson PARRISH, Appellant.

No. 24304.

Kansas City Court of Appeals, Missouri.

Feb. 7, 1966.

Frank E. Meyer, Wesner, Wesner & Meyer, Sedalia, for appellant.

Vance Julian, Clinton, for respondent.

BLAIR, Judge.

A solution of the questions presented by this appeal does not require a detailed review of the evidence. Some of the facts must preface discussion of the questions. Others will be recited as they become relevant. On August 31, 1962, Roy Jefferson Parrish was driving his Dodge automobile east on Highway No. 52 near Windsor, Missouri. It was shortly after 10 P.M. and

the night was dark. Suddenly the electrical system of his vehicle ceased to function properly. The lights grew dim and the motor died. He managed to bring it to a stop with its left wheels still on his lane of the highway and its right wheels on the shoulder. The view we take of the case renders the precise position of the automobile irrelevant. The motor was dead and could not be started again. He undertook to push the automobile off the highway but lacked the strength to move it from its standstill position. His efforts to stop passing motorists and obtain help from them were unavailing. Leaving his parking and tail lights burning he walked westward to a farm house to telephone for assistance. When he returned shortly afterward, he discovered that his automobile had been struck in the rear by a GMC truck being driven by an agent of Robert W. Keyte. Both vehicles were damaged. Keyte sued Parrish for $2200.00 for damage to his truck and for $475.00 for loss of its use. Parrish denied liability and counterclaimed for $445.00 for damage to his automobile.

The cause was tried before the court without a jury. The issues were found against Keyte and for Parrish on the petition and counterclaim and judgment was rendered for Parrish for $445.00. Following the entry of the finding and judgment, there was an immediate colloquy between the court and counsel for both parties. It lasted only a few minutes and it ended by the court setting aside its finding and judgment and ordering a new trial. That action resulted in this appeal by Parrish.

 Questioned first by Parrish is the action of the court in setting aside the judgment and granting a new trial with no written motion before it. An oral motion for new trial was made during the colloquy and no objection was raised that the motion was oral and not in writing. Besides, courts retain control of their judgments during the thirty day period after their entry and are authorized to order a new trial on their own initiative for any reason for which they might have granted a new trial on motion. Civil Rule 75.01 V.A.M.R. No written motion was required. Hoppe, Inc. v. St. Louis Public Service Co., Mo., 235 S.W.2d 347, 349; Harrison v. Weisbrod, Mo.App., 358 S.W.2d 277, 281. Of course, any order granting a new trial, on the motion of a party or the court's own motion, can only be entered "upon good cause shown" and after notice and hearing. Civil Rule 78.01; Hoppe, Inc. v. St. Louis Public Service Co., supra, 235 S.W.2d 1. c. 349. In this case there is no question of notice and hearing. As observed, the attorneys for both sides were present and the court ordered a new trial without any objection that the notice was too short or the hearing was objectionable in any way.

Prior to the trial Keyte submitted two interrogatories to Parrish. The interrogatories and answers were as follows:

Q. "Did you or any one on your behalf at the time and place of the occurrence described in your counterclaim, or have you since, obtained the names of any witnesses to the occurrence? If so, state the names and addresses of the witnesses."

A. "Neither I nor any one acting in my behalf know of any one who witnessed the occurrence."

Q. "Did you or any one on your behalf obtain the names of any witnesses at the time and place of the occurrence described in your counterclaim, or has any one on your behalf obtained the names of any witnesses to said occurrence since that time? If so, state the names and addresses of the witnesses."

A. "Neither I nor any one acting in my behalf have learned the names of any witnesses to the occurrence. Mr. John Albers of Windsor, Missouri, was the first arrival to the scene."

During the colloquy that immediately followed the entry of judgment, counsel for Keyte asserted that these interrogatories had not been truthfully answered because Parrish had not included the names of two witnesses, Mr. and Mrs. Clifford M. Yount. These witnesses had testified for Parrish during the trial. Their testimony was that on the night in question they were traveling east in their automobile on Highway No. 52 from Windsor enroute to Cole Camp after 10 P.M. and they saw Parrish's car standing partially on the highway and the shoulder with the tail lights burning. This was before the collision. Later that night on their return trip to Windsor they passed the locale again and saw both the automobile and truck after the collision had occurred. They testified they did not see the collision and no one claimed they did. At first the court said it believed the word "occurrence", employed in the interrogatories, meant only "the actual collision" to a layman. Counsel for Parrish said: "I took the interrogatory to mean, witnesses to the actual collision, Your Honor." Counsel for Keyte argued that the word "occurrence" was broad enough to include not only the actual collision itself but also the observation by the Younts of Parrish's automobile before the collision and their observation of the automobile and truck after the collision. He asked the court to cite Parrish for contempt. The court refused to cite Parrish for the reason it did not believe that a layman would understand the word "occurrence" to have the meaning attributed to it by Keyte's counsel. Finally, the court came to the conclusion that Parrish's counsel should have seen to it that the interrogatories were answered with this broad definition of the word "occurrence" in mind. Keyte's counsel then moved for a new trial and the court said: "I feel that your request to set aside the judgment should be acceded to" * * * "but it's on the failure of the attorney to not properly answer the question rather than the defendant." Parrish's counsel then said: "I honestly can tell the court I do not know whether I knew of it (the evidence of the

Younts) at the time of the answering of these interrogatories, or not." The court said: "Well, it looks like, according to your defendant's testimony, you did." Thereupon, the court set aside its finding and judgment and granted a new trial in the exercise of its discretion on the assertion of Keyte's counsel that he had been surprised by the testimony of the Younts since he had not been afforded a pre-trial opportunity to meet it.

█ Parrish argues that the action of the court in setting aside its finding and judgment on the ground of surprise was an abuse of discretion because it was not entered "upon good cause shown". Civil Rule 78.01. Keyte calls to our notice several rules which have been held to govern particular cases where discretionary action was under scrutiny by appellate courts and argues that they apply to this case and ought to lead us to affirm the court's order. We acknowledge the validity of all the rules on which Keyte relies when applied to appropriate cases. Of course, trial courts have "broad discretion to choose a course of action during the trial when evidence is challenged on the ground it has not been disclosed in answers to interrogatories", but that discretion is not without limits. Of course, "trial courts are vested with discretionary authority over questions of fact and matters affecting the determination of fact issues in setting aside a judgment", but the discretionary authority cannot be abused. Also it is true that "appellate courts are more liberal in sustaining trial courts in granting a new trial than in denying it". The decisions Keyte cites sustain these general rules. There is no need to analyze these decisions. In his brief Keyte does not demonstrate how they apply to the action of the court in this case and require a ruling of affirmance, nor does he analyze the decisions cited by Parrish and demonstrate that they do not govern this appeal.

Let us examine Keyte's claim of surprise. Parrish presented three witnesses to sup-

port his denial of liability and his counterclaim, himself and Mr. and Mrs. Clifford M. Yount whose testimony we have summarized already. Parrish testified first. The Younts followed him to the stand, first Mr. Yount and then Mrs. Yount. The testimony of the Younts covers many pages of the record. At the very outset of the direct examination of each it became apparent to Keyte's counsel that they were witnesses to the "occurrence" as he construed the meaning of that word. During the cross-examination of each it was developed that they had told Parrish the substance of what they were then testifying months before the interrogatories were submitted to Parrish. They were examined at length on cross-examination by Keyte's counsel. At the end of Mrs. Yount's testimony each party rested his case. The court then said: "You gentlemen want me to tell you how I feel about this case? Do you want to argue it, or what?" Counsel for both parties announced in identical language: "I don't care to argue it." The court then orally announced that it was finding for Parrish and against Keyte. Then it stated that it was not quite clear as to the value of Parrish's automobile immediately after the collision. Parrish was recalled to the stand and testified that the value was $50.00 or $55.00. Counsel for Keyte then cross-examined him first about the market value of the automobile and then about his answers to the interrogatories set out above. He developed from Parrish that he had known the substance of the testimony of Mr. and Mrs. Yount months before he answered the interrogatories. Following this redirect and recross-examination of Parrish each party again rested his case and the cause was submitted to the court for its decision. Thereupon it found the issues for Parrish and granted him a judgment for $445.00.

■ Of course, trial courts can impose sanctions and take appropriate corrective actions against parties who do not answer interrogatories truthfully and in appropriate cases it can even grant a new trial on the ground of surprise. Civil Rules 61.01,

78.01; Barron & Holtzoff, Federal Practice and Procedure, Vol. 2A, Section 776, p. 44 (1963–4 pocket part). But any objection that one has been victimized by surprise must be timely made and that means as early as possible. This record establishes beyond any opportunity of denial that counsel for Keyte, at the very outset of the direct examination of both Mr. and Mrs. Yount, knew that each was commencing to testify about the "occurrence" as he defined it. The interrogatories and the answers to them were in his possession and he knew that the names of these two witnesses had not been included in the answers. Never at any time as the steps outlined in the preceding paragraph moved gradually toward judgment was any suggestion of surprise made to the court. Keyte's counsel stood mute while judgment was rendered against Keyte and for Parrish. Then for the first time he raised the objection of surprise.

■■ Our courts have uniformly ruled that if a litigant is surprised by something that occurs during the trial he must call the attention of the court to it at the time it occurs and request some corrective action or ruling. He cannot stand mute and proceed with the trial, gambling on his chances for a favorable judgment, and then raise the question of surprise for the first time when the judgment rendered is unfavorable to him. If he gambles on the judgment in this way, he must abide by the result. This is the course pursued by Keyte in this case and the trial court did not have the right to exempt him from the consequences of his gamble. Brown v. Thomas, Mo.App., 316 S.W.2d 234, 236; Christesen v. Prewett, Mo.App., 11 S.W.2d 1112; Formento v. Hines, Mo.App., 225 S.W. 104, 105; Thiele v. Citizens' Ry. Co., 140 Mo. 319, 41 S.W. 800, 805; Silvey v. Herndon, Mo.App., 234 S.W.2d 335, 340; State v. Biel, Mo., 169 S.W.2d 375, 376; Pitzman's Company of Surveyors and E. v. Bixby & Smith, 338 Mo. 1078, 93 S.W.2d 920, 921; Tuttle v. Tomasino, Mo., 336 S.W.2d 683, 689; Lynn v. Kern, Mo., 323 S.W.2d 726, 731. We

hold on this record that the order setting aside the judgment and granting a new trial was an abuse of discretion.

■ Furthermore, the Supreme Court, en banc, in State v. Cloyd, 394 S.W.2d 408, 410, a prohibition proceeding, ruled that the interrogated party was not required to answer an interrogatory: "State the names and addresses of all persons known to have relevant knowledge of any facts pertaining to the occurrence alleged in plaintiffs' petition filed herein." Speaking of this interrogatory the court said: "Interrogatory No. 1 uses terms similar to the language in Rule 57.01, such as 'relevant to the subject matter' and 'knowledge of relevant facts', but following the language of the rule does not render the question proper. Relevancy is to be determined by the court as a matter of law when a factual question is asked and an objection is made. Interrogation is restricted to factual matters. The question would have been objectionable if asked at the taking of a deposition and has no better standing when propounded as an interrogatory. It calls for a conclusion and determination by the party as to what is relevant knowledge or relevant facts. *Furthermore, the interrogatory is vague and uncertain. It refers to the 'occurrence' when several occurrences are mentioned in the petition. The party interrogated should not be called on to speculate as to what is intended by the question. Since the interrogatory calls for an opinion or conclusion of law and is too general, indefinite, and uncertain, it is fatally defective* under the rule applied in State ex rel. Transit Casualty Company v. McMillian, Mo., 349 S.W.2d 210." (Emphasis supplied)

■ The interrogatories in the present case both referred to "the occurrence described in your counterclaim" and there were several occurrences mentioned in the counterclaim. They should not have been written or propounded in this form. Counsel for the parties could not agree upon their meaning. The court itself during the colloquy held first one and then another

concept for their meaning. Their ambiguity and vagueness generated this controversy and resulted in this appeal. Interrogatories should be presented in language of unmistakable meaning, otherwise they can become a tool for entrapment of the unwary. The trial court exonerated Parrish of bad faith in answering as he did and on this record we believe it to be our duty to exonerate his counsel. This we do.

For these reasons, the order setting aside the judgment and granting a new trial is reversed and the cause is remanded to the trial court with our direction to reinstate the judgment.

All concur.