**Nelda Lee PYPES**

v.

**Delos E. PYPES, Jr.**

**No. 24498.**

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Burr S. Stottle and Delos E. Pypes, Sr., Kansas City, for appellant.

Kaer P. Vanice, II, and W. Raleigh Gough, Kansas City, for respondent.

SPERRY, Commissioner.

This is an action for divorce instituted by plaintiff, wife of defendant. Defendant appeals from a judgment and a decree finding plaintiff to be the innocent and injured party, granting her a decree of absolute divorce, custody of their four minor children, denying her alimony, granting her $7.00 per week for each child for child support, and for attorney's fees in an amount of $250.00.

Plaintiff pleaded and showed by evidence that she and defendant were married June 3, 1954, and lived together as husband and wife until February 2, 1964; that their home was at all times in Kansas City, Missouri; that four children were born to the marriage; that their names and ages at the time of filing the petition, February 7, 1964, were as follows: William Graham, 8½ years; Elizabeth Rose, 7½ years; Evelyn. Louise, 6; and David Lloyd, 4 years.

She further alleged that she at all times during the marriage relationship faithfully demeaned herself as defendant's wife and fully performed her duties, but that defendant has rendered towards her such indignities as to render her condition in life intolerable. She pleaded that defendant has been critical and found fault with plaintiff in the presence of friends, relatives and acquaintances; that the defendant quarreled with plaintiff without justification or excuse; that the defendant is cold and indifferent toward plaintiff and does not manifest any love or affection for her; that defendant has, on many occasions, assaulted and beat plaintiff; that he has stated that plaintiff deserves any torture that can be devised; that defendant has threatened to kill plaintiff with a knife and has choked her; that he has thrown garbage and water on plaintiff and has torn her clothing off of her; that he has forced plaintiff into the bathtub and attempted to turn on the hot water; that he has stated that he hates plaintiff.

She offered substantial credible testimony tending to prove every specification set out in her petition. In addition thereto she offered substantial evidence of other indignities offered and committed by defendant, including evidence that he cut up her wedding gown, and that, after she collected the pieces, intending to preserve them for sentimental reasons, he burned the pieces; that he threw a hot ham across the dining room, narrowly missing their son

and her father who was a guest at her father's birthday dinner; that he tore her glasses from her face and broke them; that he broke the glass covering of the case in which her nurse's certificate was kept and tried to destroy the certificate; that, for no good reason, he struck and knocked their elder son across the room; that he took from the elder daughter a bicycle which plaintiff's parents had given her and refused to permit her to use it; that he claimed a divine, God-given right to chastise her in any way, and at any time, that he saw fit. The evidence was that these incidents took place and occurred over a long period of time, at least five years or longer, and that they were continuous.

There was ample evidence, from highly qualified witnesses, tending to prove that plaintiff is a qualified and capable nurse and is of good character and reputation. Defendant, in his testimony, virtually admitted the occurrence of each and every incident above mentioned, but attempted to justify his conduct, in some manner, on the theory that he was then under great emotional stress, was not steadily employed, and was worried about supporting his family and preserving the integrity of his marriage. He admitted that plaintiff was a good woman, a good mother, that he loved her; and he stated that he had tried to reconcile their differences and persuade her to resume the marital relationship, which she refused to do.

■ Under the allegations contained in the petition, and under the evidence offered by plaintiff in support thereof, the court was fully justified in finding the issues for plaintiff and against defendant, absent any further showing. In view of defendant's almost complete failure to deny the allegations or to controvert the evidence in support thereof, the court could scarcely have done otherwise than he did do unless there be some valid, legal excuse for defendant's conduct. Citations in support of this declaration would be superfluous.

However, defendant contends that he was insane at the times during which the incidents above mentioned occurred; that he was not mentally capable of controlling his actions. The record fails to show that he was ever adjudged insane or mentally incompetent. There is mention in evidence to the effect that, after the separation, plaintiff attempted to have him adjudged legally incompetent, to have a guardian appointed for him, and to have him confined for treatment because she believed that he might harm himself. However, she was later advised that the legal action had been dismissed. No hearing was ever held on the matter so far as plaintiff was advised.

This trial commenced March 11, 1965. Plaintiff offered testimony of herself and of a number of other witnesses. She stated that defendant had been treated in psychiatric institutions on several occasions and that, when he committed some of the acts complained of, she believed that he must have been mentally ill or insane. Her mother stated that, because of his conduct on some of the occasions shown in evidence, she believed he was abnormal or insane. A nurse, classmate of plaintiff, who had observed mentally ill patients and who had observed defendant's demeanor and conduct at various times stated that she could not say that he was, on those occasions "abnormal", but that she believed that he deviated from the normal. Defendant testified regarding occasions when he had received psychiatric treatment at institutions in New Jersey, Topeka, Kansas, and at Kansas City, Missouri. He spoke of being willing to consult a marriage counsellor in the hope that his marital difficulties might be solved.

After both parties had "rested", the court announced that the cause would be taken under advisement. Thereafter, on April 28, 1965, the court made an order appointing Mr. J. L. Simms as guardian ad litem for defendant. Thereafter, June 4, 1965, a report of an examination, made at the Psychiatric Receiving Center, Kansas City, on May 18, 1965, was filed of record. It

was signed by Dr. Hornstra. The report indicates a finding that defendant has a "brittle" personal organization with psychiatric episodes labeled as schizophrenic; that some of his actions in the past are due to his personality; that others "might be" a manifestation of a psychotic product over which he had no control at the time the incident occurred.

Thereafter, June 9, 1965, the court, of its own motion, ordered that defendant submit to a psychiatric examination by Dr. G. J. Lytton, M.D., a qualified psychiatrist; that the guardian ad litem make such arrangements; and that Dr. Lytton be furnished with a copy of the report signed by Dr. Hornstra.

On June 23, 1965, Dr. Lytton filed his report wherein it was stated that defendant has no illusions or hallucinations; that he is rigid in his thinking; that he is right, in his thinking, and that the world is wrong; that he is neurologically sound; that, in Dr. Lytton's opinion, he is suffering from a schizophrenic reaction, paranoid type, in partial remission; that he is capable of managing his affairs, but that, under emotional pressure he might break down. (In a subsequent report dated August 10, 1965, Dr. Lytton stated that defendant was suffering from a schizophrenic reaction, probably paranoid in type and "could fall into the legal classic fixation of being insane"; that, when in the grip of strong emotions he is incompetent, unable to care for himself, and is not responsible for his reactions).

Thereafter, September 1, 1965, the court heard further evidence in the case, the parties, their counsel, and the guardian ad litem being present. Mr. Simms requested, and he was granted permission to produce the testimony of both Dr. Lytton and Dr. Hornstra. No objections were made to such procedure.

Dr. Lytton testified as to his psychiatric examination of defendant and stated that, in connection therewith, he had read the testimony of plaintiff in this case. He stated that, in his opinion as a physician and experienced and qualified psychiatrist, he believed defendant was lucid and sane at the time that he committed the acts complained of and shown in this record; that defendant is somewhat of an enigma to him, professionally, but that, after deliberation following his written reports, he is now of the opinion that defendant was, at those times mentioned in evidence, able to restrain himself had there been a policeman or other officer present; that he knew right from wrong; that his actions are not necessarily indicative of insanity. He was cross-examined by counsel for defendant and witness stated, in effect, that each of the episodes related in evidence could have been due to a "temper tantrum", or to a psychiatric episode; but witness was firm in his expressed belief that the episodes mentioned were not the result of a psychotic condition but, rather, due to controllable, but uncontrolled temper tantrums.

Dr. Hornstra stated that defendant is suffering from a personality disorder; that he is brittle in his adjustment to life; that he will not accommodate himself to any situation not of his choosing; that, because thereof, he might, under emotional strain, break rather than bend; that he seldom loses control over his actions; that he has no evidence to show that defendant ever actually was unable to control himself, not when he threw the ham, or when he cut up the wedding gown. He stated that the episodes complained of were caused by anger rather than by a psychotic condition.

■ Defendant did not express surprise upon the production of these two medical witnesses, nor claim surprise, at that time. He now claims their testimony differed from opinions previously filed in writing with the court and that he was "surprised" to his detriment. He made no request for continuance in order to gain time to produce countervailing evidence. His first recorded dissatisfaction with this procedure

appears in his motion for new trial. He urges that point here as grounds for reversal. His objection comes too late for us to consider it. Keyte v. Parrish, 399 S.W.2d 601, 605 (Mo.App.).

 If the evidence in this case on the question of defendant's mental fitness is in conflict, then we will defer to the finding of the trial court on that subject. Thomas v. Thomas, 288 S.W.2d 689, 696 (Mo.App.). In any event we cannot hold, under the evidence in this case, that the judgment herein is clearly erroneous. It must be affirmed. Thomas v. Thomas, supra.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.