E. J. HILL *vs.* W. S. LIBBY et al.

Androscoggin.   Opinion December 26, 1912.

*Appreciation. Blasting. Dangerous. Duty. Dynamite. Defect. Explosion. Experienced. Ignorance of Danger. Instructions. Motion for new trial. Negligence. Special Motion. Personal injuries. Risks.*

1. When an employer directs his employee to perform a dangerous service which requires skill and caution to avoid the risks and hazards incident to its performance, knowing the employee is inexperienced in such service and ignorant of its dangers, it is the duty of the employer to give him adequate information as to the dangers he is likely to meet in performing the service and suitable instructions and warnings as to the manner and method of doing it so that he may be able, by the exercise of reasonable care, to avoid the danger.

2. An additional duty is imposed upon an employer who finds it necessary to adopt the use of particularly hazardous agencies and appliances of giving full information to his servant who does not already have the information of the peculiar dangers arising from the use of such extraordinary hazardous agencies.

3. It was a question of fact for the jury to determine from the evidence whether the plaintiff, at the time of the accident, from experience or otherwise, had adequate information as to the risks and dangers incident to inserting a fuse into a loaded cap for the purpose of exploding dynamite.

4. The care required of an employee depends upon his knowledge, actual or constructive, of the risks and dangers to be met with in the performance of the duty assigned him.

5. If a party to an action, being himself a witness, commits wilful perjury or makes use of false testimony which he knows to be false, and thereby obtains a verdict in his favor, the court in its discretion may set aside the verdict so obtained.

On motion for new trial.   Overruled.

This is an action to recover damages for personal injuries while in the employ of the defendants.   The plaintiff had been for some years, an overseer in their woolen mill, and while the mill was shut down, at the request of the defendants, he took charge of a small crew of their laborers, in the work of grading an electric railroad

which they were constructing from Lewiston to Portland. While so employed, it became necessary to have some blasting done. The defendants' superintendent of construction asked him if he knew anything about using dynamite, to which he replied that he did not. A. M. Clark, who was experienced in that work, was put in charge of the blasting that was done at that time. There are two kinds of caps used in exploding sticks of dynamite. The plaintiff saw Clark use the cotton fuse caps in his work of blasting, but was not instructed by Clark, or by anyone else, as to the risks of exploding a cap by inserting a fuse into it, or as to the care to be exercised in doing it to avoid those risks. Subsequently, he was directed by said superintendent to do some blasting with dynamite and while so employed, received the injuries complained of by the explosion of a cap. Plea, the general issue.

The jury returned a verdict for the plaintiff for $1494, and the defendant filed a general motion for a new trial; and also a special motion for a new trial, alleging that the plaintiff had testified falsely.

*McGillicuddy & Morey,* for plaintiff.

*Joseph M. Trott, and Newell & Skelton,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, HALEY, JJ.

KING, J.   Action for personal injuries occasioned to the plaintiff while in the employ of the defendants. Verdict for $1494. The case comes before this court on defendants' motions for a new trial.

GENERAL MOTION.

The plaintiff had been in the employ of the defendants for some years as an overseer in their woolen mill. The mill being shut down for a time, at the defendants' request, the plaintiff took charge of a small crew of their laborers in the work of grading an electric railroad which they were constructing from Lewiston to Portland. To facilitate the work it became necessary from time to time to have some blasting done, and a short time after the plaintiff began work the defendants' superintendent of construction asked him if he knew anything about using dynamite, to which he replied that he did not, and Mr. Clark, a man experienced in that work, was put in charge of the blasting that was done at that time. It appears that there are two methods, or two kinds of caps, used in exploding sticks of dynamite. One is the electric fuse cap which is exploded

by heat from a battery, and the other the cotton fuse cap which is exploded by fire through the fuse. The latter cap is about an inch long and of small diameter, a little larger than a lead pencil. The explosive substance is at the bottom or closed end of the cap being congealed there or dried in. The fuse is connected with the cap by carefully inserting its end without twisting it as far into the cylinder of the cap as prudent and not strike the explosive substance, and then the top of the cap is crimped upon the fuse so that it may not move when the cap is pushed into the soft stick of dynamite. If the end of the fuse should be pushed against the charge in the cap the slight friction thereby caused would be apt to explode the cap. It is important also that there should be no dirt or grit in the cylinder of the cap or on the end of the fuse. The plaintiff saw Mr. Clark use the cotton fuse caps in his work of blasting, but he was not instructed by Clark or by any one else as to the risks of exploding a cap by inserting a fuse into it, or as to the care to be exercised in doing it to avoid those risks. Subsequently the plaintiff did some blasting with dynamite using the battery caps which are less dangerous. He did however on one occasion at least before the accident in question use some of the cotton fuse caps. As to the number of cotton fuse caps he had previously used the evidence is not definite. He admitted that at a previous trial he answered that he might possibly have used one hundred, saying, however, in explanation of his last testimony and of that answer, "I couldn't tell you the exact number. I have thought that over since the last trial and I don't see where it could have been over thirteen or fourteen."

On the 29th or 30th of September, 1910, about five months after the plaintiff began work on the railroad, the superintendent directed him to do some blasting with dynamite to facilitate the work. He told the superintendent that he had no caps and the latter directed him to send to the "shanty" and if there were none there to send to the other crews for some, saying, "I believe Kendall has got some." There were no caps at the shanty and the plaintiff sent Tim Mulrooney to Kendall's crew for some, and he brought back a small tin box about two inches square containing "probably twenty" caps. This box with the caps in it Mulrooney obtained at Kendall's crew, "at the root of a pine tree," with a piece of pasteboard for a cover

laid in the box and leaves put on top of that. As the plaintiff held one of these caps in his right hand and with the other hand was inserting the end of the cotton fuse into the cylinder of the cap, and when, according to his testimony, "the fuse had entered the cap but a short distance" the cap exploded blowing off the thumb and fore finger of his right hand and injuring him otherwise to some extent.

The negligence on the part of the defendants on which the plaintiff relies is: (1) failure to instruct him as to the dangers, risks and hazards incident to the work of blasting with dynamite, and especially in inserting a fuse into a small cap loaded with an explosive charge; (2) furnishing him with an explosive cap that was defective and dangerous on account of having been exposed to water and moisture, the dangerous condition of which he did not know and was unable to determine because of his lack of knowledge of explosive caps and his want of experience in their use; and (3) failure to inform him of the special dangers and risks in using a cap that had become defective from water and moisture, and how such defective condition could be detected.

When an employer directs his employee to perform a dangerous service which requires skill and caution to avoid the risks and hazards incident to its performance, knowing that the employee is inexperienced in such service and ignorant of its dangers, it is the duty of the employer to give him adequate information as to the dangers he is likely to meet in performing the service, and suitable instructions and warnings as to the manner and method of doing it, so that he may be able by the exercise of reasonable care on his part to avoid the danger. This rule is too well established in judicial precedent to need the citation of authorities. The duty imposed upon an employer who makes use of agencies and appliances that are especially dangerous was stated by this court, in *Welch* v. *Bath Iron Works,* 98 Maine, 361, 369 in these words: "And an additional duty, one that is to be particularly considered here, is imposed upon an employer who finds it necessary to adopt the use of particularly hazardous agencies and appliances, of giving full information to his servant, who does not already have that information, of the particular dangers arising from the use of such extraordinarily hazardous agencies, and sufficient instructions to enable him to

intelligently determine whether or not he will accept the dangerous employment, and, if he does, that he may know how to avoid them by the exercise of due care upon his part." Numerous cases, in this and other jurisdictions, are there cited, wherein that principle has been stated and applied.

The defendants do not contend against this rule, but claim that at the time of the accident to the plaintiff he was not inexperienced in the use of these cotton fuse caps in exploding sticks of dynamite, and was not then ignorant of the risks and dangers incident to their use, and, therefore, that they then owed him no duty to instruct and warn him as to those risks and dangers. But that was a question of fact in the case for the jury, and they have decided it in the plaintiff's favor, and although it appears to this court that that question was a close one on the evidence, yet we think it cannot be said with reasonable certainty that there was not sufficient evidence to justify the jury in so deciding. It clearly appears that there were actual risks and hazards incident to the work of inserting the fuse in the loaded cap. As already noted, if the end of the fuse should be pushed against the explosive substance in the bottom of the cap, or if there should be any grit in the cylinder of the cap, or on the fuse, or if the fuse should be twisted while being put in, then an explosion of the cap would be apt to result. These were not obvious but latent risks and dangers. A person who had not learned from instruction or experience how slight the friction is that may explode the cap would not appreciate the caution and delicate touch necessary to be used in inserting the fuse in the cap to avoid the risk of an explosion. True, the plaintiff admitted that he knew dynamite to be a dangerous agency, but it was the cap and not the dynamite that exploded in this case. Did he know and appreciate the imminent risk—the risk near at hand—that the cap might be easily exploded by a slight friction in inserting the fuse? He was asked on cross examination, "You knew if you scratched whatever compound there was in the barrel of that cap or the bottom of it it would go off, didn't you?" A. "No. I didn't." Therein, we think, was the risk which he did not understand and appreciate, and as to which it was the defendants' duty to instruct and warn him.

And we do not think the fact, that the plaintiff had used several of these caps before the accident, shows that he had thereby

acquired sufficient knowledge of the risks and dangers incident to their use. He was not instructed by any one as to these risks in using the cap, and the fact that he did use some of them without causing an explosion does not prove that he had thereby learned of these particular risks that must be guarded against. That no explosion occurred from his previous use of the caps was the result of good fortune rather than the result of the exercise of that care and caution in their use which an appreciative knowledge of the imminent risks and dangers likely to be met with in using them would incite.

The defendants also claim that the plaintiff was not exercising reasonable care on his part and therefore was not entitled to recover. But this, too, was a question for the jury which they decided in the plaintiff's favor, and rightly so, we think, for the care required of him depended upon his knowledge, actual or constructive, of the risks and dangers to be met with in the performance of the duty assigned him. If he did not know that the cap was apt to explode if the end of the fuse came in contact with the compound in the cap, or because of particles of dirt or grit on the fuse, then he should not have been held chargeable with negligence because he did not avoid those dangers.

It is urged further by the defendants that if the plaintiff's theory of the cause of the explosion advanced at the trial was correct, that is, that the cap was defective and exploded on that account when the fuse had been inserted in it but a short distance, then they should not have been held liable. In support of this claim they contend that they had no knowledge of such a defective condition of the cap, and that the plaintiff was negligent in using a defective cap. The plaintiff did claim at the trial that the cap had been wet and thereby rendered more liable to explode. But he did not know that at the time of the explosion. He did say that he remembered that the inside of the cap looked green or blackish, but he did not know what that signified. He had a right to assume that the cap the defendants directed him to send for was suitable for use. It was their duty to use reasonable care to furnish him caps safe for use. The jury may have found that they failed in that duty. Moreover, the plaintiff claims that he was unable to determine whether the cap was defective or not because the defendants had failed to

properly instruct him.   We, think, therefore, that the jury was justified in not finding that the plaintiff was negligent in using the cap even if they accepted his theory that it was defective.

It is also true that the plaintiff testified at the trial that the fuse had entered the cap but a short distance when the cap exploded, that he thought there was no dirt on the fuse, and that he did not think he twisted it as he put it in.   He was cross examined, however, in reference to his testimony given at a former trial, the substance of which appears to have been that he was not then sure as to how far he had inserted the fuse into the cap before the explosion, or that there was not grit on the fuse, or that he might not have twisted it.   Evidently he could not be accurate as to those details.   But the cap exploded, and there can be no doubt that the explosion was caused by friction as he inserted the fuse.   That friction may have resulted from the contact of a particle of grit on the fuse and the side of the cylinder of the cap when the fuse had been inserted but a short distance as he thought, or it may have resulted, as the learned counsel for the defendants states in his brief, when "the gritty end of the fuse scratched and ignited the explosive in the bottom of the cap as the fuse was twisted."   The jury may not have been able to determine precisely where in the cylinder of the cap the friction occurred that caused the explosion. But that was not an essential to a justification of their finding in the plaintiff's favor.   They evidently did find that the defendants failed to discharge the duty imposed upon them, when they assigned the plaintiff to the work of using the fuse caps, to instruct and warn him as to the dangers and hazards incident to the use of them, and that the explosion occurred because of their failure to discharge that duty, and without any negligence on the plaintiff's part.   It is the opinion of the court that that finding is not unmistakably wrong in view of all the facts and circumstances disclosed in the case.

The jury awarded the plaintiff $1494.00.   As the result of the explosion he lost his thumb and forefinger of his right hand and pieces of the cap were blown into his face and chest causing an infection, somewhat in the nature of blood poisoning, on account of which he suffered much pain and was considerably sick and disordered for a period of several months.   In the opinion of the court the damages assessed were not excessive.

Special Motion.

The defendants also filed a special motion for a new trial on the ground that the plaintiff testified falsely.

During the trial the defendants introduced, against objection, a copy of a letter claimed to have been written by the plaintiff to Tom Mulrooney, after the accident and before the trial, inquiring if the caps he got at the root of the pine tree were not tipped over into the dirt, or in some other way exposed to the dirt, and which letter taken as a whole the defendants contended indicated dishonesty on the plaintiff's part in procuring testimony. Ashley S. Ferguson, called for the defendants, testified that Mulrooney gave to him the original letter from the plaintiff, and that his (witness') wife made the copy of it which was put in evidence, and that the copy was compared with the original and was an exact copy of it, and that he returned the original letter to Mulrooney. He stated on cross examination that he did not testify at the former trial that he first made a copy of the letter himself and that his wife made the copy introduced in evidence from his copy, and that he destroyed his copy.

Just before the testimony was closed the plaintiff was recalled and testified, as to Ferguson's former testimony concerning the copy of the letter, as follows: "He said it was a copy that he had made from the original letter. Later he stated it was a copy his wife made, and then to fix it up he says that he copied the letter and his wife copied it from the one he had." Q. "What did he say he did with his copy?" A. "Tore it up."

The stenographer's official report of Ferguson's testimony at the former trial, made a part of the report in this case by consent, shows that he testified the same at both trials.

If a party to an action, being himself a witness, commits willful perjury, or makes use of false testimony which he knows to be false, and thereby obtains a verdict in his favor, the court in its discretion might, and perhaps it should, set aside the verdict so obtained.

But the court should not set aside a verdict and vacate its judgment because it is subsequently shown that false testimony was given at the trial, or even that the party in whose favor the verdict was given testified falsely. Something more than that must appear.

It must be shown that the winning party wilfully gave false testimony, or wilfully made use of false evidence to obtain the verdict, and the court must be reasonably satisfied that the verdict was thereby obtained.

We think the defendants have not shown that this case is within the application of that rule. The plaintiff's version of Ferguson's former testimony does differ somewhat from the stenographer's report of it, and no doubt the official report should be accepted. But the court ought not to find, we think, that the plaintiff thereby committed wilful perjury. He may have believed what he testified to, although it appears that he was mistaken. Nor does it seem reasonably probable to us that the jury could have been materially influenced as to their verdict by the plaintiff's false statement of Ferguson's former testimony. The controversy was as to whether the copy of the letter put in evidence was made from the original letter or from a copy of it. Ferguson testified that it was made from the original, and the plaintiff stated, incorrectly it appears, that Ferguson had previously testified that it was made from a copy of the original. We do not think it can be reasonably inferred that the plaintiff's verdict was obtained because he testified incorrectly in that particular.

It is accordingly the opinion of the court that the special motion for a new trial must be overruled.

*Motions overruled.*