ANNA W. ORDWAY *vs.* ANDREW W. CLUSKEY.

Penobscot.     Opinion March 3, 1930.

*Benjamin W. Blanchard*, for plaintiff.
*Joseph E. F. Connolly*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.

FARRINGTON, J. The case comes up on general motion after verdict for the plaintiff, and also on special motion for a new trial on the ground of alleged perjury of the plaintiff.

The plaintiff in a suit previously brought had recovered a judgment against the defendant for the sum of thirty-nine hundred sixty-seven dollars and fifty cents ($3,967.50). That case was carried to the Law Court on defendant's motion, and, while it was there pending, the parties arranged a settlement. The plaintiff's claim and testimony was that the defendant agreed to give her three thousand dollars ($3,000.00) and an automobile; that on June 1, 1928, in reliance on his promise that he would keep his agreement, she signed and delivered to him a release "from all debts, demands and causes of action" which she had against him; and that she had never received anything except the automobile.

The defendant admitted an arrangement for settlement but

testified that he agreed to give the plaintiff three thousand dollars ($3,000.00), denying any promise of an automobile, although he admitted buying the car and turning it over to the plaintiff and paying for registration and license in her name. That she used the car as her own and later turned it in toward the purchase price of another car is undisputed. He further testified that he had given her two thousand dollars ($2,000.00) at the time of the signing and delivery to him of the release and that at the same time he gave to the plaintiff a note payable on December 1, 1928, for one thousand dollars ($1,000.00), this being the balance of the amount promised, and that the note had been paid in full and returned to him.

The plaintiff sued on the agreement, with the usual money counts, and recovered a judgment of three thousand sixty dollars ($3,060.00).

In presenting her case, a daughter was the only witness beside the plaintiff herself, the latter testifying that she had received a Pontiac car costing eight hundred fifty dollars ($850.00), but that she had received no part of the three thousand dollars ($3,000.00).

The daughter testified that after the purchase of the Pontiac car, on July 6, 1928, she heard the defendant say that he would pay the plaintiff the three thousand dollars ($3,000.00) later on, and that, since June 1, 1928, she had several times heard the defendant and her mother talk about this settlement. She also testified that she had never seen nor heard of any note, and that at one time, when her mother asked the defendant for money, the defendant said she would never get a cent as she had nothing to show that he owed her anything. She testified that this was about December 17, 1928, and that this was the last time she heard financial matters discussed between the two.

The defendant had five witnesses besides himself, four of whom gave no testimony as to any payments of money by the defendant to the plaintiff. One witness testified that just before Christmas, 1928, she was present when the defendant said to the plaintiff, "I am going to pay you to-night,"; that the defendant "had quite a lot of money in his pocket; he laid it down on the table and got a

receipt or some kind of paper," and that then he said, "they was all settled."

The defendant argues the improbability of the plaintiff's testimony, and that the jury must have been influenced in her favor by sympathy for her or by prejudice against the defendant.

It is a truth, so fundamental and well recognized as to need no further comment, that the testimony of many witnesses may, in the judgment of the jury as the trier of fact, be outweighed by that of one or a few.

After a most careful examination of all the evidence in the printed case bearing on the general motion, we are unable to see any error that would warrant this Court in disturbing the verdict, and the general motion must, therefore, be overruled.

The case in question was tried at the May Term, 1929, of the Penobscot County Superior Court, the verdict being rendered on the ninth day of the Term.

The defendant filed no motion for further continuance of the case, but, in addition to the general motion which has been considered, on the twentieth day of the Term, he filed a special motion for a new trial on the ground that at the trial the plaintiff, with wilful intent to deceive court and jury, was guilty of perjury in giving testimony material to the issue.

This was marked "Law" under the statutory provisions relating thereto. All due notices to parties were ordered on the motion, and the evidence was taken on December 12, 1929, before a duly appointed commissioner. No question is raised as to the supporting affidavits required, and there is no contention that the motion is not properly before this court.

In approaching its consideration, it is important to note that at the March Term, 1929, the term of entry of the writ in the instant case, the defendant pleaded the general issue with a brief statement alleging full payment on his part. The plaintiff was allowed to amend the writ and at the same, March, Term, the defendant filed a motion for continuance, chiefly on the ground that the necessary evidence in proof of the defendant's plea was in persons living in distant parts of the county who could not, with due diligence, be produced at the March Term, but that those

persons with others possessing "corroborating" evidence would be available at the time to which the case might be continued.

This motion, sworn to March 12, 1929, was filed on the seventh day of the March Term and the case, on the payment of costs, was continued to the May Term and was then duly tried.

One of the witnesses, Katherine Bragg, whose testimony was taken on the motion now under consideration, was in Bangor in March, 1928, when the case was originally assigned for hearing and before it was continued, and talked about her testimony with the defendant's attorneys. A careful reading of that testimony, and of the other testimony on the special motion, convinces the Court that she not only could have been found and could have testified at the trial of the case in May, but also that all four of the witnesses relied on could have been produced and that their testimony could have been made available at the trial.

Roderick L. Phenney testified minutely as to what he saw and heard at the Gregory House, but on cross examination stated that some time in August, 1929, the defendant came to his home in Dexter and asked him if he remembered anything about the time he asked him to take defendant to Millinocket, referring to the time he was at the Gregory House, and Phenney said that he replied, "I told him, yes, that I remembered it *faintly*."

Mrs. Phenney (who testified that she was quite deaf and that she acquired her deafness in "War time," and who admitted that the attorney, who stood within a few feet of her in cross examination at the trial when she had reason to be alert as to what was being said, was obliged to speak "quite" loud in order for her to hear), testified in detail as to the conversation between the plaintiff and the defendant which took place more than a year previously.

Because of numerous decisions in this state which need not be cited, the defendant can not on his special motion rely on the evidence as newly discovered, as the printed record of the case fails to show that it was discovered since the trial, but, on the other hand, clearly indicates that it must have been known at the time of trial and that it could then have been produced by the exercise of due diligence.

18

In the special motion it is claimed that the plaintiff committed wilful perjury, and the defendant, having made no effort to effect a continuance, comes directly to this court asking for a new trial, not in terms on the ground of newly discovered evidence, but bringing new evidence, which cumulative in its nature, he presents with the hope that it will impress the court as indicative, if not conclusive, of perjury.

The weight of authority appears to be that where there is no reason to suspect certain testimony to be perjured, and no laches is shown, the courts will generally grant a new trial, if, after the trial, satisfactory evidence of its perjured character is discovered, and it is as to a material issue, or the verdict is based principally on such testimony (20 R. C. L., Sec. 80, p. 299, and cases cited). The underlying principal in most if not in all of this class of cases will be found to be that of newly discovered evidence which may tend to establish the perjury.

Perjured testimony offered at the trial is not a ground for new trial when it is known at the time to be false but no effort is made to meet it, nor time requested, but the case is submitted with the false testimony at the risk of the judgment. *Pepin et al* v. *Lautman*, 28 Ind. App., 74, 62 N. E., 60 ; *Thiele* v. *Citizens' R. Co.*, 140 Mo., 319, 41 S. W., 800, citing *Bragg* v. *Moberly*, 17 Mo. App., 221.

One who has paid a claim sued on and knows that a judgment can be obtained only on false testimony, which he is able to rebut, but fails to produce the evidence, is not entitled to a new trial. *Heathcoate* v. *Haskins et al*, 74 Iowa, 566, 38 N. W., 417.

In this case the Court says, "That the production upon the trial of false testimony to establish a cause of action or defense would in many cases amount to such a fraud as would entitle the adverse party to a new trial, or the vacation of the judgment, is certainly true. This would be so if the fact of its falsity or the evidence by which the fact could be established was not discovered until after the trial or the rendition of judgment. But it would be trifling with the law to permit a party who, being advised in advance that testimony of that character would be resorted to on the trial, and who knew also of the existence of evidence by which the false testimony could be rebutted, but who neglected to either produce that

evidence or assert his defense, to afterwards question the judgment because it was founded on that testimony; for, while it is the policy of the law to afford the parties to litigation the fullest opportunity for the establishment of their rights, it is equally its policy to maintain and enforce the judgments pronounced by the courts after these opportunities have been enjoyed by the parties, and it appears to us that this is the position in which plaintiff is placed by the averments of his petition."

The issue in the case on which the verdict was rendered was clean cut. Either the three thousand dollars ($3,000.00) had been paid or it had not been paid. When the defendant went to trial he knew what that issue was. He knew that the plaintiff, in order to recover a verdict, must necessarily testify that she had never received any part of the money; that her claim, if false, could be supported in no other way than by perjured testimony. He knew that if her testimony were false he must meet it by proof of the full payment which he had pleaded. He was not taken by surprise. The evidence is convincing that by the use of reasonable diligence he could have had in court at the trial in May, 1929, the four witnesses on whose testimony he now relies for the direction of a new trial. For these reasons the Court is of the opinion that the motion should not be sustained.

But we will for the moment leave this phase of the case out of consideration and come directly to the claim of perjury as such.

In *Hill* v. *Libby*, 110 Me., at p. 157, the Court says, "If a party to an action, being himself a witness, commits wilful perjury, or makes use of false testimony which he knows to be false, and thereby obtains a verdict in his favor, the Court in its discretion might, and perhaps it should, set aside the verdict so obtained.

"But the Court should not set aside a verdict and vacate its judgment because it was subsequently shown that false testimony was given at the trial or even that the party in whose favor the verdict was given testified falsely. Something more than that must appear. It must be shown that the winning party wilfully gave false testimony, or wilfully made use of false evidence to obtain the verdict, and the Court must be reasonably satisfied that the verdict was thereby obtained."

If the plaintiff in this case did commit perjury, it must have been wilful under the simple issue of fact presented. But we are not "reasonably satisfied" that such perjury was committed.

Inquiry presents itself as to why either Roderick L. Phenney or his wife, Maxine Phenney, whose testimony has been referred to on this motion, was not asked to witness the release which they would have the court believe was the paper handed to the defendant at the time they testified to seeing money handed to the plaintiff at the Gregory House.

There is no evidence from the defendant at the trial that these two witnesses were present in the room at the hotel, a fact so important, if true, that it could hardly have escaped the defendant's memory so that he would have failed to have had them present to testify in his behalf.

We are also confronted by the query as to why the defendant, when he came from Millinocket to Bangor to arrange the settlement, did not have both the note and the release prepared in Bangor. He testified that the note was prepared for him in Millinocket by one Williamson, who was not produced as a witness, but that the release was made for him in Bangor, on the day the settlement was effected, at the office of Mr. O'Leary, whose name appears on the docket as one of the attorneys for the defendant.

Finding nothing in the case which satisfactorily disposes of these questions, and from careful consideration of the entire case, we are far from being "reasonably satisfied" that wilful perjury was in fact committed by the plaintiff, and consequently the entry must be,

*General and Special*
*Motions overruled.*