ANNEBELLE BOISVERT, COMPLAINANT *vs*. LEO CHAREST.

York.    Opinion, August 23, 1937.

*William P. Donahue*, for complainant.
*Armstrong & Spill,*
*John P. Deering*, for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J.    On March 21, 1936, the complainant, seventeen years old, was delivered of a child. Eleven days previously she had sworn out a bastardy complaint against this respondent. Jury tried, he was adjudged to be its father. He attacks the verdict both by general and special motions, the latter based on alleged newly discovered evidence.

## General Motion

We are satisfied that the verdict should not be overturned on this motion. Even would this Court have come to a different conclusion in the first instance, we can not say that the jury was not warranted in returning its verdict. *Foster* v. *Eastern Trust & Banking Co.*, 110 Me., 552, 88 A., 474; *Gammon et al.* v. *Libby*, 110 Me., 552, 88 A., 480.

The complainant testified that late in the evening of June 21, 1935, she and Lucille McMullen, a married woman, took an automobile ride with the respondent and Arthur Gendron; that upon its completion they went into the respondent's room in his apartment, and there in darkness the intercourse took place upon his bed in the presence of Mrs. McMullen and Mr. Gendron. Upon discovery of her pregnancy, she said, she accused the respondent and asked him to marry her, which he refused to do.

On December 13, 1935, an attorney drafted a settlement agreement between the parties which they both signed under seal. While as to her, due to her minority, it had no legal efficacy, yet it contains matter, which, no doubt, influenced the jury in reaching its verdict, as the undertaking by the respondent to make weekly payments to the complainant, both before and after the birth of the child (which he did for a time), besides paying "all of her medical and doctor's bills that will be incurred by the said Annebelle Boisvert in the confinement and birth of the child to be born." Had he been innocent, while he might have signed such an instrument, in all likelihood he would not have done so.

Truly the agreement stated that the paternity of the child was unknown and that the respondent did not admit it, but the jury could have found and probably did find that this young French girl did not understand the meaning of the word "paternity." She so testified. He had consulted the attorney before they appeared in his office. The settlement was extremely unfavorable to her. The jury no doubt thought that he desired to get rid of the complainant as easily and quickly as possible and at small expense, but for his own sake would have the document so drawn that if, due to her minority, it should not be complied with, it would contain no damaging admission of guilt upon his part.

The witnesses for the complainant were her sister, Irene, who testified that the respondent told her that if the complainant would submit to an operation he would give her $50 for that purpose; Dr. Stickney, who testified as to the accusation during travail, and the Recorder of the Municipal Court.

The defense offered a young lady with whom the respondent had kept company, her mother, and the attorney who drew the agreement. The complainant's story was denied in toto by the respondent. The evidence of his witnesses was to the effect that he kept such steady company with his young lady that he had no opportunity to have committed this act with the complainant. Their evidence was not convincing.

The verdict must stand as against the general motion.

### Special Motion

On this, the respondent seeks a new trial on the ground that the complainant gave perjured testimony, viz: That the intercourse took place in the presence of Mrs. McMullen and Mr. Gendron. To establish the perjury, the respondent produced the latter named as witnesses. They denied explicitly that they were in his room at all the night of June 21st or at any other time or that they went automobiling as claimed by the complainant. He also presented one Regina Rousell, a young woman who took care of Mrs. McMullen's children, and she testified that she slept with the complainant on the night of June 21st.

Where a party, himself a witness, commits wilful perjury or makes use of false testimony which he knows to be false and thereby obtains a verdict, the court in its discretion may and perhaps should set aside the verdict returned. *Hill* v. *Libby et al.*, 110 Me., 150, 85 A., 487; *Ordway* v. *Cluskey*, 129 Me., 13, 149 A., 386.

Still, a party against whom the perjured evidence is given can not sit by and do nothing, if something can be done to protect himself, when surprised with such testimony.

"Perjured testimony offered at the trial is not a ground for new trial when it is known at the time to be false but no effort is made to meet it, nor time requested, but the case is submitted

with the false testimony at the risk of the judgment." *Ordway* v. *Cluskey*, supra, page 18.

Evidence discoverable by due diligence before will not upon discovery following the trial justify an order for a new trial.

"Without such limitation there would always be the danger of a retrial of every case because of the laxity of the party or his counsel seeking such relief." *Bumpus* v. *Lyon*, 133 Me., 125, 127, 174 A., 265, 266.

"The law holds parties to the exercise of due diligence in the preparation of their cases, and public welfare as well as the interest of litigants requires that suitors should prepare their cases with reference to all the probable contingencies of the trial. A new trial will not be granted on the ground of newly discovered evidence when the moving party, by proper diligence, might have discovered such evidence in season for the trial." *Kimball* v. *Clark*, 133 Me., 263, 267, 177 A., 183, 184, and prior Maine cases cited on page 267.

The only exception to this rule is when on all the evidence it is apparent that an injustice has been done. *Cobb* v. *Cogswell*, 111 Me., 336, 89 A., 137 ; *Rodman Company* v. *Kostis*, 121 Me., 90, 115 A., 557.

This respondent upon hearing the testimony with relation to the presence of Gendron and Mrs. McMullen made no effort whatever to protect himself as against what he now claims to be her perjured testimony. She was the first to testify at the trial. She then told her story. The trial lasted two days. Within two days after the verdict, the respondent took the affidavits of both Gendron and McMullen. No doubt they were available and could have been produced at least on the second day of the trial. Anyway, there is no evidence to the contrary. Instead of then producing them, the respondent was satisfied to permit the case to be submitted to the jury. Afterwards, if the verdict should be adverse, he would resort to a special motion. This can not be countenanced.

As said in *State* v. *Shea*, 132 Me., on page 18, 164 A., 739, 740, "It" (meaning the evidence to support such a motion) "must have

been discovered since the trial, and it must appear that it could not have been discovered before the trial by the exercise of due diligence."

With reference to the testimony of the other affiant, Regina Rousell, it, too, it would seem, should have been discovered before the trial upon the employment of due diligence. It was set forth in the complaint that the begetting took place on the night of June 21st. Naturally almost the first act upon the part of an innocent defender, particularly in an action of this sort, would be to attempt to ascertain the complainant's whereabouts at the designated time and to discover with whom she then was, if anybody. This was not done. Lack of due diligence is apparent.

But if the case were ordered to a new trial and the evidence of these three witnesses were produced before a jury, we are not satisfied that then a different verdict would probably result. *State* v. *Shea*, supra; *Bolduc* v. *Garcelon*, 127 Me., 482, 144 A., 395. Mrs. McMullen was a married woman with six children. The jury might well believe that she would screen her presence on such an occasion with Gendron as her companion; and, too, Gendron, it might think, would testify falsely in his own interest.

The young Rousell girl, working for Mrs. McMullen, it might be thought, would be under her dominance and testify so as to protect her friend and employer.

The fact that this respondent signed the condemnatory agreement, above referred to, would probably be sufficient to overcome the testimony of these new witnesses.

*General motion overruled.*
*Special motion overruled.*
*New trial denied.*