CHARLES ROSENBERG,

*Plaintiff and Appellant,*

vs.

JAKE ROSENBLUM,

*Defendant and Respondent.*

(No. 2565; September 15th, 1953; 261 Pac. (2d) 41)

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of Vincent Mulvaney, Cheyenne, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of A. G. McClintock, Cheyenne, Wyoming.

## OPINION

HARNSBERGER, Justice:

This is a direct appeal taken by the plaintiff below from a judgment finding generally for the defendant and that plaintiff take nothing by his action for the recovery of $5,000 alleged to be due him because of the defendant's fraud in failing to disclose to the plaintiff that the defendant was receiving a $10,000 real estate agent's commission in a transaction wherein the plaintiff and defendant became equal purchasers of two apartment buildings for the sum of $266,000.

The defendant-respondent was licensed as a Real Estate Broker in this State, and had secured the open listing of a property owned by the Clinton Company, a Wyoming Corporation, on which there were being completed two separate apartment houses. No fixed price was set by the owner but the defendant was authorized to submit any offer of purchase which he might obtain. In consequence, the defendant attempted to sell the property, suggesting at one time a price of $285,000, and had received an offer of $255,000, when the defendant approached the plaintiff in an effort to sell the apartment buildings to him. This effort resulted in the plaintiff and the defendant together making an offer to the owner to purchase the properties for the sum of $265,000, which eventually culminated in a sale of the property being made to them for $266,000, the payment of which was to be $5,000 accompanying the offer, $25,000 on consummation of the purchase, the assumption of an existing mortgage of

$224,400, and the giving of a second mortgage of $11,600.

The parties each contributed $2,500 to purchase a cashier's check, made the down payment of $5,000 and, when the adjusted purchase price was agreed upon, each party gave their respective checks for $12,500 to the representative of the owner in payment of the $25,000 which was the balance of cash to be paid. The owner cashed plaintiff's check for $12,500, but a short time after the receipt of the same, the owner returned to the defendant his check for $12,500, and the defendant gave the owner a check for $2,500.

The owner had transferred the real estate to the purchasers so as to constitute them tenants in common, and when differences arose between them the plaintiff instructed his attorney to dissolve the relationship. After some negotiation a voluntary division of the real and personal properties was made, the plaintiff taking one of the apartment buildings and the defendant taking the other, and there was also certain money adjustment, made necessary by reason of difference in related street improvements.

In summary, the plaintiff's petition charges that one E. S. Kassler, Jr., the president of the Clinton Company, and the defendant, conspired and fraudulently represented to plaintiff that the purchase price of the properties was $265,000, while in truth and fact the price was $255,000; that the defendant induced the plaintiff to join with him in the purchase of the apartments at the adjusted price of $266,000 without disclosing to the plaintiff that the defendant was to receive a commission on the sale and, therefore, the plaintiff was defrauded to the extent of one-half of the commission received by the defendant, such commission being the difference between the defendant's $12,500

check, which was returned to him, and the $2,500 check, which the defendant gave in lieu thereof, and that plaintiff was entitled to recover of and from the defendant the sum of $5,000, together with interest and costs.

The defendant's first defense challenges the sufficiency of the petition.

His second defense denied any fraud; admits representing to the plaintiff that the purchase price of the properties was $266,000; admits the terms of purchase were $5,000 down, $25,000 on consummation of the sale, together with the assumption of the $224,400 first mortgage and the giving of an $11,600 second mortgage; alleges that defendant did in fact and in truth pay $15,000 which was his share of the cash payment to be made, but asserts that subsequent to delivering his $12,500 check to the Clinton Company, that Company agreed there was no need for it to issue a separate check for the amount of defendant's commission and, therefore, a credit in defendant's favor was entered on the books of the Clinton Company in the amount of $10,000, and the balance of the defendant's share of the cash payment was paid by the defendant giving the Clinton Company his check for $2,500; that at the time of the transaction, the plaintiff was completely aware that the defendant had acted as real estate broker in the matter and expected to and would receive a commission for such services.

In a third defense, the defendant alleges it was the plaintiff who proposed that defendant join with him in making the purchase and that the offer of purchase made by the parties and accepted by the Clinton Company, was made "with full awareness by Plaintiff that Defendant would thereby earn and receive a broker's commission for his services."

For a fourth defense, the defendant alleges that in negotiations for a division of the properties, the plaintiff specifically claimed that plaintiff had been defrauded by defendant's receipt of a commission on the sale; that such claim was disputed by the defendant and that as a result of those negotiations "a division was agreed on, transfers effecting the division were executed, the accounts between the parties settled and agreed, and payment was made by Defendant to Plaintiff in full satisfaction and discharge of all claims between the parties, including the claim which is the basis of this action."

The defendant's fifth defense pleaded estoppel, because of the matters set forth in the fourth defense.

The sixth defense asserted that the statute of limitations had run.

The plaintiff-appellant specifies as error—

1. That the judgment and decision of the court is not sustained by sufficient evidence, the pleadings admitting defendant was to pay $15,000 in cash as his part of the down payment; that he only paid $5,000; that his commission based on 5% of the sale price, viz. $266,000, would amount to $13,300, and he was credited with a commission of $10,000; that defendant was a partner in the transaction and not entitled to a commission.

2. That the judgment and decision of the court is against and contrary to the evidence.

3. That the judgment and decision of the court is not reasonably and substantially sustained by the evidence.

4. That the judgment and decision of the court is contrary to law.

The court must therefore determine whether or not there is in fact and in law sufficient evidence in the record to justify the general finding and judgment in favor of the defendant, keeping in mind the rule so often previously announced, " ' * * * that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." (Johnson v. Johnson, 68 Wyo. 61, 64, 229 Pac. (2d) 918.)

In their briefs and arguments before this court, both parties have discussed the law and facts bearing on the nature of the relationship of the parties resulting from the manner of their purchase, their operation of and their title to the property, and their respective duties and obligations each to the other inherent in such relationship. However, it will be unnecessary to decide these matters in view of what we further say, as it may be conceded for the purpose of disposing of the case, but without so deciding, that the relationship required the utmost of fair dealing and full disclosure between them.

The first matter to be determined is whether or not there is any substantial evidence to prove that the plaintiff knew or was informed by the defendant, that the defendant was to receive a real estate broker's commission on the sale of the property to the parties, as the plaintiff should not recover if he had full knowledge of that fact at the time the purchase was made.

Aside from the earnest insistence by counsel that this court give heed to evidence favorable to the plaintiff-appellant on this score, which, of course, we may not do where there is conflicting evidence in the record,

the evident theory of the plaintiff-appellant is that when the defendant admitted in his answer and by his testimony that he had represented to the plaintiff, that the purchaser would require a cash payment from the parties of $30,000 and then gave his check for $12,500, having already contributed $2,500, thus ostensibly fulfilling his obligation to pay $15,000 or one-half of the total cash payment, and further admitted that the $12,500 check was not cashed but returned to him in exchange for his $2,500 check, that this amounted to an admission that the defendant had misrepresented the terms of purchase and had concealed from the plaintiff the fact that the defendant was to receive a commission on the sale. Even if we were to concede that the facts so admitted constituted some evidence to support the plaintiff's theory, yet we are faced with the further fact that the record contains testimony explaining the transaction together with other evidence directly contrary to the plaintiff's theory and which, if believed by the court, gave substantial support to the finding and judgment rendered.

The plaintiff himself testified that for years he had known that the defendant was a real estate broker and agent.

The defendant was cross-examined under the statute and also testified in his own behalf undergoing further cross-examination. In the course of his testimony he stated that he told the plaintiff he had the property for sale on "open listing"; that the second time he showed the property to the plaintiff, which was about a week after the first showing, the plaintiff said to him "You will make a good commission on it", to which he replied "Yes sir", and on being asked "How much will you get", he further replied "My commission is five per cent, Mr. Rosenberg"; that later when the first

deposit was to be made and the defendant was going to make out his check for $2,500 to pay one-half the cost of the cashier's check, the plaintiff "jumped on me and he says 'Well, you could afford to make it because you make five per cent commission on it' ". At another place in his testimony, the defendant recounted that the plaintiff remarked " 'You are making enough commission you could go ahead and make out a check' ". We must assume that the court believed the defendant and did not believe the testimony of the plaintiff to the contrary.

Even if this testimony of the defendant was the only evidence in the record to the effect that the plaintiff knew and had been told by the defendant prior to the purchase that he would receive a broker's commission, it still was the perogative of the trial court, as the trier of fact, to believe such evidence and to disregard other conflicting testimony.

The text of Corpus Juris Secundum, after explaining that the testimony of a single witness when opposed by the testimony of several other witnesses, will not readily be accepted as controlling especially where the single witness is a party, or interested, and the adverse witnesses are disinterested, states—" * * * However, there is no absolute rule, and a single witness may be believed, somtimes by reason of statute, so that his testimony will sustain a verdict or finding, although several witnesses have testified to the contrary, even though he is interested or a party to the action, and especially where he has full knowledge of the facts and the knowledge of the opposing witnesses is only partial, where his opportunities for observation were superior, or where the circumstances surrounding the transaction in question are confirmatory of his testimony." (32 C.J.S. 1057, Sec. 1022, See Notes 29, 30 and 33 with authorities cited thereunder.)

As was said in Matthews Turpentine Co. v. Keefe, 17 Ala. App. 74, 81 So. 852, and quoted with approval in Lamar Life Ins. Co. v. Kemp, 30 Ala. App. 138, 1 So. (2d) 760, 762:

" 'The plaintiff was the only witness in his behalf and his statements * * * were sufficient, if believed by the jury, to justify the verdict rendered against the defendant. To be sure, all the material statements of the plaintiff were contradicted by the witnesses of the defendant, making the whole controversy one peculiarly fitted for the determination of a jury.' "

Also the Alabama Court said in Sloss-Sheffield Steel & Iron v. Bearden, 202 Ala. 220, 80 So. 42, 44:

" * * * It was open to the jury to accept, to give credence to the plaintiff's evidence, as opposed to that of the several witnesses for the defendant. The trial court saw and heard all of these witnesses. The acceptance of plaintiff's version of the circumstances surrounding his injury and of the character and extent thereof justified, it is readily conceivable, the conclusions prevailing with the jury. * * * "

And the Maine Court in Ordway v. Cluskey, 129 Me. 13, 149 A. 386, 387, said:

"It is a truth, so fundamental and well recognized as to need no further comment, that the testimony of many witnesses may, in the judgment of the jury as the trier of fact, be outweighed by that of one or a few."

Also in Holm v. City of Seattle, 159 Wash. 618, 294 Pac. 261, 262, the court stated:

" * * * There are no physical facts in this case which would overcome the testimony of respondent, and the fact that five or six witnesses testified in support of the appellant's theory of the case does not destroy the testimony of the respondent. * * * "

Not being in a position to observe the parties as they gave their testimony, and to judge from their actions, demeanor and their manner of speaking what relative

credence should be given to their statements, we are compelled to accept the court's reaction and judgment in the matter. When this is done we cannot say that as a matter of law the trier of fact may not reach a conclusion based solely on the testimony of one of the parties. However, there is some corroboration of the defendant's testimony. The witness Oestereich stated that in approximately one year after the purchase and prior to the differences between the parties that led to their dividing the properties, and long prior to the time the plaintiff said he first learned of the commission, the plaintiff had complained to the witness about the defendant's having received a commission on the sale.

Furthermore, while speculation that the plaintiff should have known or did in fact know that the defendant would receive a commission because he was known by the plaintiff to be a real estate broker, might not properly be indulged, yet such knowledge on the part of plaintiff, leaves the defendant's testimony removed from improbability.

The plaintiff-appellant's first assignment of error also takes note that the computation of the 5% commission which defendant-respondent testified he was to receive on the sale price, would be the sum of $13,300, while other evidence showed and the defendant admitted he had actually received a commission of but $10,000. Just how this circumstance is supposed to reflect error is completely unclear. It is possible that plaintiff-appellant feels that the discrepancy in the testimony as to the agreed amount and the amount finally credited, constituted some evidence adversely affecting the credibility of the defendant-respondent. However that may be, it evidently did not so impress the trial court. In any event it adds nothing to the first assignment of error.

There being sufficient substantial evidence before the court to justify the conclusion that the plaintiff-appellant had not been defrauded because he knew and had been informed by the defendant-respondent about the commission before the purchase was consummated, it follows that the judgment of the lower court could be affirmed on this ground alone. However, there is at least one other reason why the decision of the trial court should be sustained.

By his fourth defense, the defendant pleaded that there had been made a complete and final settlement of all matters of dispute between the parties, including the plaintiff's claim with respect to the receipt by the defendant of the commission on the real estate sale. On this issue it appears that when the settlement agreement between the parties was made, there were present Mr. Swainson, the plaintiff's attorney, Mr. Lee, the defendant's attorney, and the defendant in person. The defendant testified that he then said "I told Mr. Lee not to deliver (the settlement agreement), I said 'Mr. Lee, I want you to understand this deed is going to be delivered and everything is divided but I don't want no suits, no obligations of any kind. They are trying, you know, to sue me, you know, of commission.' Mr. Swainson, you know, asked me, he says, he is going to sue me for commission. I says, 'Mr. Lee', I says, 'you are not going to deliver that deed until everything is settled.' I says, 'I am willing, you know, to pay everything, you know, what you fellows are going to decide and I am leaving you a check to deliver the deed but I don't want no suits, anything against the property.' "

This was corroborated to some extent by Mr. Lee who testified that the question was raised about the commision on the real estate deal when the settlement was being agreed upon, and that at that time Mr. Swainson said " 'Well, you are lucky that you

settled, otherwise you would have had a nice lawsuit on your hands concerning commissions.' ", and that later Mr. Swainson further stated to Mr. Lee, " 'Well, we beat ourselves out of a good lawsuit,' or something to that effect, 'over commissions and other damages.' "

It certainly seems that if the court believed this testimony, it might properly have determined that the settlement then made was intended by the parties to, and did finally, settle the commission matter between the parties.

Aside from the aforegoing reasons for affirming the judgment in question, if plaintiff's action were to be construed as a claim to share in defendant's commission, it is quite possible that the court would have been justified in sustaining the demurrer pleaded under the rule laid down in Owens v. Capri, 65 Wyo. 325, 202 Pac. (2) 174, where it was held that by the provisions of Chapter 37, Article 21, Wyoming Compiled Statutes, 1945, a person not holding a real estate broker's or salesman's license could not recover a commission or any compensation for services rendered in making or negotiating the sale of real estate even though such sale or negotiation was an isolated transaction. If the plaintiff was permitted to recover in this action, in effect it would amount to his receiving a commission on the sale of real estate contrary to the statutes of this state, inasmuch as the record does not disclose that plaintiff was a licensed real estate broker or salesman.

Because of what has been said, it is unnecessary to discuss the other matters at issue upon the defenses interposed. The judgment of the lower court must be affirmed.

*Affirmed.*

BLUME, C. J. and RINER, J., concur.