**Don LOYD, Appellant,**

v.

**Farris SAFFA, Appellee.**

**No. 62690.**

Court of Appeals of Oklahoma,
Division No. 4.

Feb. 11, 1986.

As Corrected Feb. 28, 1986.

Rehearing Denied March 10, 1986.

Certiorari Denied May 28, 1986.

Gomer A. Evans, Jr., J. Richard Johnson, Jr., Tulsa, for appellant.

Conner & Winters, David L. Fist, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, for appellee.

BRIGHTMIRE, Presiding Judge.

The principal issue raised in this appeal is whether the record discloses an absence of material fact issues regarding whether plaintiff is entitled to a 5% finder's fee for bringing to defendant a purchaser of his land. We hold there exist unresolved material issues of fact and therefore reverse the summary judgment.

## I

Relevant to the reviewable problem are these facts. Plaintiff, Don Loyd, brought this action alleging that on February 15, 1981, he and defendant, Farris Saffa, entered into an oral agreement in which Saffa agreed to pay Loyd a finder's fee equal to 5% of the sale price of a 345–acre tract of land located near the City of Tulsa, Oklahoma. Loyd did find a prospective purchaser who bought the land for $2,550,000. Saffa refused to pay Loyd the 5% fee and this action was brought to recover it. Saffa defended the action on the ground that plaintiff, having failed to allege that he was a licensed real estate broker, had not stated a recoverable claim. Eventually defendant moved for a judgment on the pleadings because of this assumed allegational defect. The trial court sustained it and granted defendant judgment. Plaintiff appealed and the judgment was reversed.[1]

Upon remand the defendant filed a motion for summary judgment. On May 2, 1984, the trial court "found" that Saffa did agree to pay a finder's fee as alleged but that "Loyd negotiated or attempted to negotiate the transaction" which made him a "real estate broker" within the meaning of that phrase as defined in 59 O.S.1981 § 858–102(2),[2] and concluded as a matter of law that this action is not maintainable under 59 O.S.1981 § 858–311 because of plaintiff's failure to allege or prove he has a broker's license.[3] Upon this foundation the trial court rendered a summary judgment for defendant. Plaintiff, of course, appeals.

## II

The primal question is, then, whether the record reflects as an undisputed fact that plaintiff is seeking "recovery of a money judgment as compensation for services rendered in listing, buying, selling, renting, leasing or exchanging of any real estate." We hold it does not.

The trial court's judgment is founded on the finding that plaintiff in fact "negotiated or attempted to negotiate the transactions," that is, the sale of defendant's land. Implicit in the judgment is a further finding that such "negotiation" is a service rendered by Loyd "in listing, buying [or] selling ... real estate."

In order to resolve the problem presented it is necessary preliminarily to recognize certain applicable principles of public policy and some definitional discriminations.

The public purpose for the Oklahoma Real Estate License Code (59 O.S.1981 §§ 858–101 et seq.) is to regulate the real estate business, and those engaged in it, for the protection of the public. *Ratcliff v. Cobb*, 439 P.2d 194 (Okl.1968). And a construction of unclear provisions of the Code must be consonant with and in pursuit of such purpose.

Here no one has suggested defendant was taken unfair advantage of, overreached, defrauded, misled, or was otherwise harmed by anything plaintiff did or did not do.

The fact is that plaintiff and defendant were long time acquaintances. Defendant knew plaintiff was not a licensed broker

1. *Loyd v. Saffa*, No. 58,304 (Okl.Ct.App., June 14, 1983) (reversed and remanded).

2. Section 858–102(2) reads:
   "2. The term 'real estate broker' shall include any person, partnership, association or corporation, foreign or domestic, who for a fee, commission or other valuable consideration ... lists, sells or offers to sell, buys or offers to buy, exchanges, rents or leases any real estate, or who negotiates or attempts to negotiate any such activity, or solicits listings of places for rent, or solicits for prospective tenants, or who advertises or holds himself out as engaged in such activities."

3. Section 858–311 says:
   "No person, partnership, association or corporation acting as a real estate broker or real estate sales associate shall bring or maintain an action in any court in this state for the recovery of a money judgment as compensation for services rendered in listing, buying, selling, renting, leasing or exchanging of any real estate without alleging and proving that such person, partnership, association or corporation was licensed as a real estate broker or real estate sales associate when the alleged cause of action arose."

but to avoid any possibile of misunderstanding plaintiff reminded Saffa that he "wasn't a real estate person and all I could do was get them together." It was for this specific service Saffa agreed to pay 5% of the purchase price if a sale was consummated.

This brings us to the more or less crucial issues which involve two statutory provisions and which to some extent overlap or at least compliment each other.

■ First there is the question of whether plaintiff's testimony demonstrates that he acted as a broker. The only thing the trial court found that plaintiff did to create such status was to "negotiate or attempt to negotiate" a sale of subject land. For a definition of the word "negotiate" the trial court referred to *Black's Law Dictionary* 934 (5th ed. 1979). This was all right except that he skipped the first definitional paragraph and from the second one lifted a broad generalization which we believe is not consonant with either the context of section 858–102(2), the purpose of the act, or the intent of the legislature. We think the word "negotiate" is used in section 858–102(2) in an ordinary sense as set out in the first paragraph of *Black's*, and that is to "bargain with another respecting a purchase and sale" of real estate in an effort to consummate a sale. In other words there must be conduct that places one in the position of bargaining with a party to settle the terms of a real estate agreement—ordinarily on behalf of one party or the other.

The evidence in this record does not sustain the trial court's express finding that plaintiff negotiated or attempted to negotiate a sale contract. After reaching the finder's fee agreement with Saffa, plaintiff introduced Chew to Saffa. Some time later Saffa asked plaintiff to tell Chew that he, Saffa, wanted to retain certain land in subject acreage which bordered on a man-made lake. Plaintiff did and Chew said he was not interested unless he could get the entire lake. Loyd passed this information on to Saffa. The only other thing Loyd did was to attend the meeting of Saffa and Chew, listen to them discuss and agree on the terms of the sale, respond to Saffa's inquiry as to whether a Corps of Engineers' report Saffa had should be given to Chew, told Chew he ought to get a copy of such report, and, after the written contract had been prepared, told Saffa about a call he had received from Chew expressing dissatisfaction with certain portions of the agreement.

■ The foregoing activity is what the trial judge concluded amounted to negotiating and, as he put it in his journal entry of judgment, resulted in Loyd "cross[ing] the line" which established the limits of a mere "finder" status and entered the real estate broker zone.

We disagree. None of what he did amounted to bargaining in any sense of that word. The facts are, of course, colored by the circumstance that both the buyer and seller were long-time acquaintances and presumably friends of Loyd. This, however, does not raise any kind of an inference of brokerage activity. On the contrary it detracts from such a conclusion by explaining that what Loyd did was at the specific request of a party or in the interest of protecting his finder's fee interest—something which, as it turned out, was wise to have done. Whatever else may be said about the situation it is undisputed that Loyd expressly told Saffa, as we said, that not being a "real estate person" he could not and would not undertake to act as one. Certainly since the asserted purpose of the Real Estate Licensing Act is for the protection of the public there is nothing in this record to suggest such purpose was the least bit slighted.

The second relevant statutory provision is section 858–311, prohibiting recovery of compensation in certain instances by one acting as a broker or associate sales agent. It is significant that section 858–311 does not purport to prohibit recovery of compensation for every or any service rendered by an unlicensed individual acting as a real estate broker, but only for services rendered in "listing, buying, selling, renting, leasing or exchanging of any real estate." So, even if the trivial services rendered by

Loyd were arguably to be considered that of a broker he would still not have to allege the possession of a license and thus be prohibited from recovering his finder's fee because *he does not seek compensation for* services rendered in *listing, buying, selling, renting, leasing, or exchanging of any real estate.* He seeks recovery only of a fee for finding a person willing to purchase Saffa's land.

The trial court erred in granting defendant a summary judgment.

### III

Finally since this cause must be remanded for further proceedings and because of its lengthy litigation history, we will address the status of the case with respect to what, if any, material issues of fact exist.

During oral argument defendant advised the court that he intended to deny (1) that he orally agreed to pay plaintiff a finder's fee, and (2) that plaintiff "found" purchaser Chew.

■ With regard to the first matter the trial court found that "Saffa admits that he entered into a verbal agreement with Loyd to pay Loyd certain compensation for Loyd's services in connection with the Saffa-Chew transaction." True the trial court also observed that Saffa made the factual admission "[f]or the purpose of his Motion for Summary Judgment only," but that does not detract from the evidentiary validity of the admission against interest. One cannot admit a material fact for the purpose of obtaining a judgment and later prevent its use as evidence by disclaiming or repudiating it on the ground it was only a contingent admission and he really did not mean that it was an undisputed fact. The test for obtaining a summary judgment is quite different from the test employed to determine whether a party's allegations are sufficient to state a cause of action or a defense. The test for granting a summary judgment is whether there is an absence of material issues of fact which need to be resolved by a trial. Here Saffa induced the trial court to find, as it did, that Loyd acted as a "broker" in the sale of Saffa's property by admitting he made the

verbal agreement in question with Loyd. The fact that Saffa made this admission to obtain a summary judgment does not diminish or destroy its evidentiary status as an undisputed fact. On the contrary Saffa is estopped to now deny the admitted fact.

■ There is, however, a material issue concerning whether plaintiff "found" purchaser Chew. In this regard there is evidence in the record—indeed, the trial court implicitly *"found"* that Loyd did indeed "find" Chew within the intent and meaning of the admitted oral agreement. It is immaterial whether Saffa was acquainted with Chew, how well he knew him, or how long he had known him. The issue is whether Loyd performed the contractual role of a "middle-man" and put "the parties in a position where they" could and did make their own deal. This is in harmony with the law of the case articulated by the court of appeals in disposing of the first appeal. This issue awaits a trial.

### IV

The summary judgment appealed is vacated and the cause is remanded with directions to proceed with a jury trial.

RAPP and STUBBLEFIELD, JJ., concur.