**BOWLERAMA, INC., a Wyoming corporation, Appellant (Plaintiff),**

v.

**WOODSIDE REALTY COMPANY, a Colorado corporation; and Ronald M. Swearingen, Appellees (Defendants).**

No. 86–317.

Supreme Court of Wyoming.

April 6, 1988.

Rehearing Denied April 28, 1988.

Don W. Riske, Cheyenne, for appellant.

Timothy G. Williams of Guy, Williams, White & Argeris, Cheyenne, for appellees.

Joseph B. Meyer, Atty. Gen., Donna Rice McCrea, Asst. Atty. Gen., for amicus curiae Wyoming Real Estate Com'n.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Sadly, this case is illustrative of the changing mores of a society that, with increasing frequency, feels no obligation to honor its agreements. Greg Anderson and Daniel Graeber, owners of all of the stock of Bowlerama, Inc., seek here to renege on their promise and recover back an agreed commission paid upon the sale of their bowling alley.

Appellant sued Woodside Realty and Ronald M. Swearingen to recover a real estate commission in the sum of $61,000, claiming technical violation of the Wyoming Real Estate License Act of 1971, Section 33-28-114(b), W.S.1977. This appeal is from summary judgment in favor of Woodside Realty and Swearingen.

Appellant states the issues as:

"I. Whether the district court erred in denying appellant's motion for summary judgment.

"A. Whether appellees violated the Wyoming Real Estate License Act, W.S. § 33-28-101 et. seq.

"B. Whether appellant is barred from recovery on equitable grounds.

"II. Whether the district court erred in granting appellees' motion for summary judgment."

We affirm.

### FACTS

Greg Anderson and Dan Graeber had been trying, without success, for more than three years to sell their bowling alley located in Cheyenne, Wyoming. Anderson and Graeber contacted a close friend, Bud Shafter of Denver, Colorado, who was the general manager of four bowling alleys and knowledgeable in the bowling alley business, to seek help in selling their bowling alley. Shafter suggested a Colorado realtor, Ronald Swearingen, who had been active in offering Colorado bowling alleys for sale and who had been dealing with several prospective purchasers. The four men met on April 15, 1983, in Ft. Collins, Colorado and discussed the potential sale. Swearingen informed appellant that he was not licensed in Wyoming and would have to associate with a Wyoming broker. Following the meeting, Swearingen contacted Eileen Proffit of Uinta Realty in Evanston, Wyoming who, with the approval of her broker, agreed to associate as resident broker. On April 18, 1983, Anderson and Swearingen met in Denver, and an interim agreement was prepared and sent to Graeber. Swearingen then prepared a listing agreement on a Wyoming exclusive listing form, circulated it to the co-owners and their Cheyenne attorney, then mailed it to Uinta Realty for execution. Proffit and her broker executed the agreement on June 1, 1983. Graeber initially denied that he was aware that a Wyoming broker, Uinta Realty, had been associated. He conceded, however, at the end of his deposition, that he knew of the Wyoming broker's association, stating:

"In my own mind, after seeing all the documents and going through all this testimony, I think that Uinta Realty was probably typed on the first initial agreement that I signed."

The listing agreement provided for a broker's fee of 8% of the selling price with a referral fee of 90% of the total commission to be paid to Swearingen and Woodside Realty.

After the listing agreement was executed, Swearingen contacted John Mason, a prospective purchaser with whom he had been working and who was interested in purchasing a bowling alley, and advised him concerning the availability of Bowlerama. Mason asked to deal directly with the sellers and was assured that would be alright. Thereafter, negotiations for the sale were had between Mason, appellants, their Cheyenne attorney, and their accountants. Swearingen was in contact with the parties by phone from his Colorado office and visited Wyoming a couple of times concerning the sale.

Within three months the parties concluded an agreement for the sale and purchase of Bowlerama and delivered an earnest money check in the amount of $10,000 to Swearingen's Denver office. Uinta Realty was advised of the transaction. Swearingen came to Cheyenne for the closing at the request of appellant's Cheyenne attorney. He prepared settlement sheets for the closing, renegotiated his commission, reducing it from $108,000 to $61,000, and received from Mr. Graeber a commission check in the amount of $61,000. Swearingen deposited the check and forwarded $4,000 to Uinta Realty as its share of the commission. The sale was concluded. The parties were satisfied. Each received what they bargained for. There was no claim of

fraud, dishonesty, deceit or overreaching. Almost two and one-half years after the sale was concluded, Graeber was informed by a lady who worked for the Wyoming Real Estate Commission that he might be able to recover back the commission he had paid and that he should talk to attorney Riske, who, six months later, filed this lawsuit to recover back the commission paid. There was no factual dispute. The trial court denied recovery back of the commission, granting Swearingen and Woodside Realty summary judgment.

■ Summary judgment is only appropriate on a dual finding that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. *Hurst v. State,* Wyo., 698 P.2d 1130 (1985). The record on appeal must be viewed most favorably to the party opposing the motion, giving to him all favorable inferences that may be reasonably drawn from the record. *Olson v. A.H. Robins Co., Inc.,* Wyo., 696 P.2d 1294 (1985). Summary judgment is not appropriate when material issues of fact exist. *Siebken v. Town of Wheatland,* Wyo., 700 P.2d 1236 (1985). A fact is material if it would establish or refute one of the essential elements of a cause of action or defense asserted by either party. *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983).

The Wyoming Real Estate License Act of 1971, as amended in 1983, governs disposition of this case. The act provides that persons engaged in the business of a real estate broker, associate broker or salesman must be licensed. Section 33-28-101, W.S. 1977. Any person performing any part of a real estate transaction for consideration is deemed a broker, associate broker or salesman. Section 33-28-104, W.S.1977. The statute defines a "broker" as

"an individual, other than a salesman, or associate broker who, for another and for compensation:

\* \* \* \* \* \*

"(C) Negotiates, offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate;

\* \* \* \* \* \*

"(K) Assists or directs in the procuring of prospects calculated to result in the sale, exchange, lease or rental of real estate; or

"(M) Assists or directs in the negotiation of any transaction calculated or intended to result in the sale, exchange, lease or rental of real estate." Section 33-28-102(a)(iii), W.S.1977.

Clearly, Swearingen, acting as a broker in procuring prospects and being licensed in the state of Colorado, was a nonresident broker.

With respect to a nonresident broker licensed in another state, as was Swearingen in this case, § 33-28-110(a), W.S.1977, provides that

"[i]t is unlawful for any licensed broker to compensate any person who is not a licensed broker, associate broker or salesman for performing any of the acts regulated by this act [§§ 33-28-101 through 33-28-206]; provided, however, that *a licensed broker may pay a commission to a licensed broker of another state if the nonresident broker does not conduct in this state any of the negotiations for which a commission is paid.*" (Emphasis added.)

With respect to civil liability, § 33-28-114(b), W.S.1977, provides:

"If any person receives any money or the equivalent thereof as a fee, commission, compensation or profit by or in consequence of a violation of any provision of this act [§§ 33-28-101 through 33-28-206], he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the court, which penalty may be recovered in a court of competent jurisdiction *by any person aggrieved.*" (Emphasis added.)

■ Although not raised by the parties, it seems to us that any claim for recovery of the share of the commission paid reposes with the aggrieved person, who in this case must be the licensed Wyoming broker (Uinta Realty). If the nonresident broker (Ronald Swearingen) conducted negotiations in the state of Wyoming, he may not have

been entitled to receive a share of the commission. But Uinta Realty, the aggrieved person, does not assert that claim. It does not seem that appellant, under the provisions of § 33–28–114(b), W.S.1977, is an aggrieved person who can recover the penalty provided. The listing agreement was with a Wyoming broker. A nonresident broker was involved. A buyer was produced, the bowling alley was sold, the services were rendered, and appellant became obligated to pay the agreed commission. Appellant received what it bargained for. Appellant paid for the services of the real estate broker and, under the statute, may not qualify as an aggrieved person.

■ Appellant nevertheless asserts that it is an aggrieved person under the statute, that appellee Swearingen violated the Wyoming statute by conducting negotiations in Wyoming without being licensed in Wyoming and, as a result, appellant should recover back the $61,000 commission already paid. Even if we assume that appellant was an aggrieved person under the statute, we conclude that the trial court, nevertheless, was correct in denying appellant's claim to recover the commission.

Section 33–28–110(a), W.S.1977, permits a broker licensed in another state to associate with a Wyoming broker in order to receive a commission, provided (1) he is licensed in another state, and (2) he does not conduct negotiations in Wyoming. It is undisputed that Swearingen was licensed in Colorado, that he affiliated himself with a Wyoming broker, and that the Wyoming broker executed the exclusive listing agreement.

The critical question then becomes whether Swearingen conducted negotiations in Wyoming. The trial court found that he did not. Swearingen said he did not. And Graeber, testifying in his deposition, said Swearingen was not involved in the negotiations. He was asked:

"Q. Do you have any complaints about his [Swearingen's] handling of this matter other than the fact that he wasn't a licensed Wyoming broker?

"A. Just the fact that I—he didn't really handle the sale, I did, and buyers did.

\* \* \* \* \* \*

"Q. Okay. What are the other reasons?

"A. The other reasons were that *all the negotiations that took place he wasn't instrumental in any of them*, other than the first meeting in Ft. Collins, one meeting with the buyers and the—the closing. That's the only input that he had.

\* \* \* \* \* \*

"Q. Well, what other things didn't he do other than help you with Exhibit Eight?

"A. He didn't do anything. He brought me a buyer and showed up at the closing. That was about it." (Emphasis added.)

And Graeber was asked:

"Do you feel that Mr. Swearingen could have assisted you in some way in getting a higher figure?

"A. Yes, sir.

"Q. And how would he have done that?

"A. *Just been involved in the negotiations.*" (Emphasis added.)

And again:

"Q. And after two or three years, you had found a buyer?

"A. Yes, sir.

"Q. And *you* had *negotiated terms that you could live with* ?

"A. *Yes, sir.*" (Emphasis added.)

■ The parties asked that they themselves be allowed to conduct the negotiations. Swearingen agreed. The parties conducted the negotiations which were concluded with an agreement. Appellant asserts that it is an *aggrieved person* because Swearingen did not conduct the negotiations; then, to the contrary, it asserts that it should recover the penalty from Swearingen because he did conduct negotiations in Wyoming. Appellant cannot have it both ways. A party ought to be bound by his own testimony. Graeber said repeatedly that Swearingen was not involved in the negotiations. We agree. He did not solicit business in Wyoming but was contacted by the owners in Colorado. Negotiations concerning the listing occurred in

Colorado. Swearingen conferred with the buyer and sellers and put the parties together by phone from Colorado. Advising a potential purchaser of the availability for purchase of the bowling alley may have been acting as a broker, but it was not negotiations. Swearingen was allowed by statute to act as a broker except with respect to conducting negotiations in Wyoming. The term "negotiate" requires conduct that places one in the position of bargaining with a party to settle the terms of a real estate agreement. *Loyd v. Saffa,* Okla.App., 719 P.2d 844 (1986). Appellant contends Swearingen did not participate in negotiations that culminated in the sale. The parties themselves negotiated the purchase and sale. There was no error by the trial court in concluding that Swearingen did not conduct negotiations in Wyoming.

Finally, the equities in this case do not favor appellant. Its owners had been trying to sell their bowling business over a period of three years. They then contracted with Swearingen, who sold it in three months. Appellant agreed to pay a commission of $108,000, then renegotiated the commission to an agreed $61,000—$47,000 less than originally agreed. Everyone was satisfied. Now, three years later, appellant seeks to recover back the commission paid.

Appellant conceded that appellees did not take unfair advantage and that it was not harmed by appellees' actions. Appellant admitted it was not concerned about where Swearingen was licensed. Appellant accepted the benefit of appellees' efforts in selling the bowling alley and now comes, in equity, asking the court to help the corporation avoid the obligation it voluntarily assumed by contract.

■ The purpose of the Real Estate License Act of 1971 is to protect the public. *Battlefield, Inc. v. Neely,* Wyo., 656 P.2d 1154 (1983); *Hagar v. Mobley,* Wyo., 638 P.2d 127 (1981). That purpose was served here. There was a resident broker associated who was within this jurisdiction and subject to discipline by the Wyoming Real Estate Commission, if that was appropriate. The Wyoming broker is not complaining. The Real Estate Commission has taken no action. Even the seller has no complaints, except that now that the bowling alley is sold, "who needs a real estate broker." He would like his money back. Thus, seller Graeber testified:

"Q. Isn't the primary thing that a broker does for you is to produce a buyer that eventually buys your properties?

"A. The primary thing, yes.

"Q. And to that extent, Mr. Swearingen got that much done?

"A. Yes, sir.

"Q. To that extent, he had benefited both you and Mr. Anderson?

"A. Yes, sir,"

and

"Q. He didn't receive more as a commission than what he was entitled to under the agreement, did he?

"A. No, sir.

"Q. He didn't steal any of your properties or your money, did he?

"A. No, sir.

"Q. He didn't misrepresent anything to you that caused you any financial damage, did he, other than the commission problem?

"A. No, sir."

The purpose of protecting the public is not violated when a broker, licensed in another state, cooperates with a broker licensed in the state where the sale occurs in procuring a purchaser. *Howell v. Steffey,* D.C.App., 204 A.2d 695 (1964).

"The obvious *purpose of the Act* in question *was to protect the public* from being forced to deal with dishonest or unscrupulous real estate operators, *rather than to permit one party to gain an unconscionable advantage by avoiding a just obligation which he has contracted to pay.*" (Emphasis added.) *Bell v. United Farm Agency,* Okla., 296 P.2d 149, 152 (1956).

The dissent suggests that, if the facts were reversed, the sale was of Colorado real estate, and a Wyoming broker had associated with a Colorado broker, the Wyoming broker would suffer at the hands of a Colorado court. The cases cited by the

dissent are simply irrelevant and do not support that statement. Thus, in *Lemler v. Real Estate Commission*, 38 Colo.App. 489, 558 P.2d 591 (1976), the sole issue before the court was

> "whether payment may be obtained from the Colorado Real Estate Recovery Fund to satisfy a judgment entered against a corporation and its president as the result of fraud committed in connection with a contract to erect a residence upon the property of the plaintiffs."

And *Broughall v. Black Forest Development Co.*, 196 Colo. 503, 593 P.2d 314 (1978), was a suit by an individual (not a broker) to recover a finder's fee for sale of a radio station. *Brakhage v. Georgetown Associates*, 33 Colo.App. 385, 523 P.2d 145 (1974), was a suit to recover a finder's fee. *Fields v. MacNab*, 70 Or.App. 154, 688 P.2d 409 (1984), was a suit under a statute similar to § 33–28–114 W.S.1977, by a nonresident broker against the resident broker to recover his share of a commission. If anything, it supports our prior suggestion that the aggrieved party is the resident broker, not the seller.

▪ Contrary to the claim in the dissent, there is no requirement that the Wyoming broker be actively involved in the sale. The negotiations and sale can be concluded by the parties themselves precisely as in this case. And it makes no difference that the property is in Wyoming; the buyer is in Wyoming; the seller is in Wyoming; the sales document was prepared in Wyoming; and the sale was closed in Wyoming in the presence of the out-of-state unlicensed broker. If the out-of-state broker did not conduct negotiations in Wyoming, there can be no recovery.

The dissent refuses to recognize that this was a case in which a nonresident real estate broker associated with a resident real estate broker for the purpose of selling a bowling alley located in the state of Wyoming. The effect of this arrangement was that:

(a) The nonresident broker was a licensed real estate broker; thus, all of the finders fee cases brought by unlicensed persons previously cited supra are irrele-

vant. Also irrelevant are *Rosenberg v. Rosenblum*, 72 Wyo. 91, 261 P.2d 41 (1953), a case in which a real estate agent, licensed in Wyoming, recovered a commission; *Owens v. Capri*, 65 Wyo. 325, 202 P.2d 174 (1949); and *Dixon v. Ringsby*, Wyo., 405 P.2d 271 (1965); and

(b) The nonresident broker could do everything a licensed real estate broker could do in the sale of this real estate except "conduct negotiations in the state of Wyoming." This means that the balance of cases cited by the dissent are not in point.

It is also stated in the dissent:

> "We need go no further than the definitive analysis of Federal District Judge Ewing Kerr, defining the appropriate answer in *Doran v. Imeson Aviation, Inc.*, 419 F.Supp. 586, 588 (D.Wyo.1976):
>
> "'Since Doran was not a licensed real estate broker in the State of Wyoming, the contract between Doran and Imeson was void and any actions taken by Doran to sell the business were unlawful and Doran is prevented from bringing this action for his commission under the laws of Wyoming.'"

Judge Kerr stated in *Doran*, supra at 587, that "in November, 1975 Doran produced a buyer," and "[h]is activities in producing a purchaser * * * constitute sufficient grounds for holding that *he was acting as [a] real estate broker*." (Emphasis added.) Then he held the contract of the parties void. The case cited obviously has no relevance. Swearingen was acting as a broker, but it was proper for him to do so. His contract was not void. He was not suing to recover a commission. It had been paid. He was not suing to enforce an illegal contract.

Established law differentiates between a broker or individual suing to collect a commission and a seller suing to get it back years after it has been paid. Cases generally hold that one who has paid money to an unlicensed person for performance of a contract is not entitled to recover the money back upon a number of grounds, some of which are that equity and principles of restitution do not require that the money

be paid back, the payment was voluntary, it was a mistake of law by which the payor is bound, there is no equitable reason for making restitution to a plaintiff who gets what he expected, and the parties to an illegal contract which has become executed cannot in equity and principles of restitution require that money be paid back. Annot., Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupational or Business License or Permit to Make Contract, 74 A.L.R.3d 637 (1976). It may have been an unusual, fortuitous circumstance that these parties wished to and did negotiate themselves. That may not happen often. But the fact that it did happen here means that Swearingen did not violate the statute because he did not conduct negotiations. That must be the reason appellant paid the brokerage commission at the closing, for as Graeber testified:

> "If I hadn't felt that the fee was owed, I would have never made him a check out in the first place."

As this court aptly stated in a similar case:

> "It seems appropriate here to call attention to the fact that no member of the public has been adversely affected by anything that Ms. Neely did. The only one complaining is the corporation who hired her knowing she was not a licensed real estate agent, and now, after she has performed for her employer, it seeks to play little statutory interpretation games in an effort to avoid paying her the commissions it promised and the commissions she has earned. We are supportive of the trial judge's comments when, denying defendant's motion for a directed verdict, he said:
>
> " 'The evidence further indicates that there were sales and there was benefit that accrued to Battlefield, Inc. and to the Defendants in this action. The Court does not believe that it is or ought to be the policy of Wyoming law that under those types of facts and circumstances, an owner of land, of Wyoming land, which is to be subdivided, can take advantage of a person not holding a real estate sales license, obtain the benefits when he doesn't care whether they are licensed or not, obtain the benefits of such a transaction and then utilize and manipulate the Wyoming law to his own advantage to avoid that for which he bargained.' " *Battlefield, Inc. v. Neely,* supra 656 P.2d at 1158.

> "Courts do not like to aid litigants in avoiding their contractual obligations by joining in their games of hide-and-seek behind statutory technicalities—especially is this so where the other party has performed and the party looking to avoid the contract has reaped all the benefits of the performance. We will not aid and abet such efforts if we can possibly avoid it." Id. at 1157.

Appellant's plea for equity finds no support in this record.

Affirmed.

THOMAS and URBIGKIT, JJ., each filed separate dissenting opinions.

THOMAS, Justice, dissenting.

I cannot agree with the result espoused by the majority in this case. I am satisfied that the question which we resolve is whether the Real Estate License Act of 1971, §§ 33–28–101 through 33–28–206, W.S.1977, adopted by the Wyoming legislature, has any efficacy. I recognize that in *Battlefield, Inc. v. Neely,* Wyo., 656 P.2d 1154 (1983), we did say that we will not assist litigants in avoiding their contractual obligations if we possibly can avoid it. This case is distinguishable from *Battlefield, Inc. v. Neely,* supra, because, in that case, we were not sterilizing the statute, and there, the party primarily responsible for the statutory infringement lost the case. I am dissatisfied with the result in this case because I am persuaded that *Battlefield, Inc. v. Neely,* supra, has been extended to justify a conclusion that we will not aid and abet efforts to avoid contractual obligations even if we must ignore statutory provisions that should be enforced.

The majority examines the equities of this situation at length. I do not disagree with the proposition that appellant bargained for the result. As the majority say:

"Clearly, Swearingen, acting as a broker in procuring prospects and being licensed in the state of Colorado, was a nonresident broker." Ante at 1380.

The thrust of the Wyoming statutes regulating brokers is that Swearingen was not permitted to contract with Bowlerama, Inc. to accomplish this transaction as it actually developed. He was the professional who should have known that. Consequently, I am not persuaded that the equities, if they are material, are as heavily weighted in favor of Swearingen as the majority claim.

Placing some of the majority language in juxtaposition demonstrates the lengths to which the majority go and makes my concern painfully clear. I quote:

" * * * Swearingen then prepared a listing agreement on a Wyoming exclusive listing form, circulated it to the co-owners and their Cheyenne attorney, then mailed it to Uinta Realty for execution." Ante at 1379.

\* \* \* \* \* \*

" * * * Swearingen was in contact with the parties by phone from his Colorado office and visited Wyoming a couple of times concerning the sale." Ante at 1379.

\* \* \* \* \* \*

" * * * Swearingen came to Cheyenne for the closing at the request of appellant's Cheyenne attorney. He prepared settlement sheets for the closing, *renegotiated* his commission, reducing it from $108,000 to $61,000 * * *." Ante at 1379. (Emphasis added.)

\* \* \* \* \* \*

" * * * The term 'negotiate' requires conduct that places one in the position of bargaining with a party to settle the terms of a real estate agreement. * * * There was no error by the trial court in concluding that Swearingen did not conduct negotiations in Wyoming." Ante at 1382.

The majority opinion is inconsistent internally, both specifically and generally. This court held in *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982),

that one could be guilty of first-degree murder by making arrangements from out of state to commit a homicide in Wyoming. I have no equivocation in saying that if one can commit murder in Wyoming without presence in the state, a result with which I agreed in that case, it is well within the realm of possibility to negotiate for the sale of a business in Wyoming without presence in the state. Obviously, that is precisely what Swearingen did.

The majority quotes from § 33–28–104, W.S.1977, which defines a "broker" by describing activities. The majority then recognizes that Swearingen did those things. Section 33–28–114(b), W.S.1977, encompasses a sanction for violation of the statute by providing liability for a penalty "which penalty may be recovered * * * by any person aggrieved." The majority suggests that the licensed Wyoming broker, Uinta Realty Company, not Bowlerama, Inc., might be the aggrieved party. In substantially the same breath, however, the majority note that it is unlawful for Uinta Realty to compensate Swearingen for performing any of the acts regulated by the statute except that it may pay a commission to Swearingen if Swearingen did not conduct in this state any other negotiations for which a commission is paid. Section 33–28–110(a), W.S.1977. In the posture in which this case comes to us, the only way that Uinta Realty could be an aggrieved party is if it did not violate the statute because Swearingen paid compensation to Uinta Realty rather than Uinta Realty paying compensation to Swearingen. I suppose that really is what happened in this instance. Nevertheless, I am satisfied that there does exist, at the very least, a substantial and genuine question of fact as to whether Swearingen did these things in violation of the Wyoming statute. Summary judgment was not appropriate.

In sum, I disagree with the majority's view in this case, and I would reverse the summary judgment entered against Bowlerama, Inc. I understand that it got what it bargained for in its arrangement with Swearingen. That arrangement was possible only because Swearingen violated the

Wyoming statutes regulating real estate brokers. He was the one in a position to know that he was violating the law, and, consequently, he should not be protected in those activities which infringe upon the Wyoming statutes. I perceive a very clear question of fact for the jury as to whether actions of Swearingen constituted negotiations in Wyoming for which the commission was paid. I believe that a finder of fact could conclude that such negotiations occurred in Wyoming, and there would be sufficient evidence to sustain that finding. A case such as this does not lend itself to summary judgment. As the majority acknowledge:

" * * * The record on appeal must be viewed most favorably to the party opposing the motion, giving to him all favorable inferences that may be reasonably drawn from the record." Ante at 1380.

I also have a very real concern as to whether the Wyoming Real Estate Commission can accomplish any effective regulation if this court is willing to overlook the cavalier approach Swearingen adopted in this case. If one were to design a textbook example of conduct pursued for the purpose of evading the Wyoming Real Estate License Act of 1971, no better illustration could be found than the facts of this case. Under the circumstances, the policy of enforcing the state statute should override the concern that Bowlerama, Inc. does not come to court with clean hands. Perhaps it does not, but it does come demonstrating a clear violation of the statute. The summary judgment should have been reversed, and I would so hold.

URBIGKIT, Justice, dissenting.

I am unimpressed with the subterfuge displayed in this record where an unauthorized and unlicensed out-of-state (Colorado) real estate broker employed an Evanston, Wyoming (350 miles away) licensed broker as window dressing for a sale of Wyoming property in Cheyenne to a Wyoming customer, for which a real estate commission was paid in Wyoming. It is singularly inappropriate to sustain this summary-judgment decimation of the Wyoming regulatory system. Compared to the operational Wyoming real estate brokerage law as now to have a disingenuous standard, the question of who gets or keeps this controverted real estate commission is relatively unimportant.

Likewise, it is difficult to define factually or legally why the Wyoming Real Estate Commission is incorrect in record summarization in its amicus curiae brief:

" * * * The fact that the interim listing agreement was drafted and signed in Colorado by one Wyoming property owner does not mean 'negotiations' were conducted in Colorado. The subsequent listing agreement was prepared in Colorado on a Wyoming Association of Realtors form and mailed to the Wyoming broker. This fact does not establish that 'negotiations' were conducted in Colorado. After listing the property, appellee telephoned the ultimate buyer in Laramie, Wyoming and told him about the Cheyenne property. Appellee phoned the owners in Cheyenne and Pennsylvania and told them about the prospective buyer. He obtained and prepared detailed information about the Wyoming property and relayed the information to the Wyoming buyer. The purchase offer was drafted in Wyoming by Attorney Tom Long of Hirst and Applegate, Cheyenne. Since Appellee was the agent for the seller, the purchase offer reflects the terms he had negotiated with the Wyoming buyer. Appellee prepared part of the settlement sheet in Wyoming, attended the closing in Wyoming and received his commission check in Wyoming.

"An examination of W.S. 33–28–102 will show that negotiations took place in Wyoming.

" "(a) As used in this act:

" "(iii) "Broker" means an individual, other than a salesman, or associate broker who, for another and for compensation:

" "(C) Negotiates, offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate;

" '(K) Assists or directs in the procuring of prospects calculated to result in the sale, exchange, lease or rental of real estate; or

" '(M) Assists or directs in the negotiation of any transaction calculated or intended to result in the sale, exchange, lease or rental of real estate.'

"Certainly Appellee's actions constitute activities which should have been conducted by a Wyoming licensee or someone in association with a Wyoming licensee as required by statute."

If we apply the modern concept followed in conflict-of-law rules as the analysis of facts and factors, 16 Am.Jur.2d, Conflict of Laws § 101, for a methodology to determine application of this transaction to Wyoming, about the only thing not included is a properly licensed Wyoming broker actively involved in the transaction. The property is in Wyoming; the buyer is in Wyoming; the seller is in Wyoming; the sales document was prepared in Wyoming; and the sale was closed in Wyoming in the presence of the out-of-state unlicensed broker. The fact that some intermediate discussion took place in Fort Collins, across the state line in Colorado, is neither convincing nor controlling as far as a requirement that a Wyoming broker be *actually involved* in addition to selling his name and staying in Evanston.

Surely Wyoming law cannot (or should not) be construed to imply that the only required function of the qualified residential broker is to sign a listing agreement and then otherwise distance himself from the transaction except as some modest fee may be paid to him for the name-use function by the out-of-state, unqualified real estate salesman. The course of telephone calls was part of the negotiating process, but not more completely definitive than attendance at and participation in the final draft of the sales documents, closing and immediate collection of the commission from the real estate proceeds paid in Cheyenne.

Reason and precedent reflect that if everything had been reversed between states, in the state from which Mr. Swearingen came to Wyoming to involve himself in this real estate sale, as applied in Colorado, both a criminal penalty and a disallowance of commission would have been engendered. *Lemler v. Real Estate Commission,* 38 Colo.App. 489, 558 P.2d 591 (1976) (Colorado statute is penal, § 12–61–119, C.R.S.1973); *Benham v. Heyde,* 122 Colo. 233, 221 P.2d 1078 (1950); *Broughall v. Black Forest Development Company,* 196 Colo. 503, 593 P.2d 314 (1978); *Brakhage v. Georgetown Associates, Inc.,* 33 Colo.App. 385, 523 P.2d 145 (1974); *Cary v. Borden Co.,* 153 Colo. 344, 386 P.2d 585 (1963). Disallowance on an even more closely identified factual situation is found in *Ladner v. Harsh,* 239 Miss. 46, 120 So.2d 562 (1960), and *Fields v. Macnab,* 70 Ore.App. 154, 688 P.2d 409 (1984). See also, Annot., 74 A.L.R.3d 637, Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupation or Business License or Permit to Make Contract; *Sullivan v. PRC Oil & Gas Co.,* 148 Mich.App. 427, 383 N.W.2d 641 (1986); *Watts v. Andrews,* 98 N.M. 404, 649 P.2d 472 (1982).

This decision poorly serves the purpose for which the real estate broker and salesman chapter was enacted to protect "the public in the handling of important and valuable transactions relating to real property." *Toavs v. State by and through Real Estate Commission,* Wyo., 635 P.2d 1172, 1174 (1981); *Mapes v. Foster,* 38 Wyo. 244, 266 P. 109 (1928). The question is how to get to that desired regulation for this transaction involved with Wyoming participants and Wyoming property, differentiated only by the out-of-state unlicensed broker. Wyoming has clearly followed the rule that one of the ways is to deny collection of the commission when unlicensed. *Dixon v. Ringsby,* Wyo., 405 P.2d 271 (1965); *Rosenberg v. Rosenblum,* 72 Wyo. 91, 261 P.2d 41 (1953); *Owens v. Capri,* 65 Wyo. 325, 202 P.2d 174 (1949).

"But under a statute enacted in exercise of the police power of the state expressly making unlawful a single isolated act of an unlicensed real estate broker in negotiating a sale, selling, or buying real estate, the decisions appear to be practical-

ly unanimous in holding that no compensation can be recovered under such circumstances by an unlicensed person." 202 P.2d at 177.

A trial evaluation of the Wyoming activities of Ronald N. Swearingen in consideration of the statutory criterion of "any negotiation" would be demonstrably appropriate. The summary-judgment disposition is not supported by this factual record for the decision on the controversial facts as a matter of law, and should not be affirmed by the apparent creation of a strange rule of real estate brokerage law. *Cordova v. Gosar*, Wyo., 719 P.2d 625 (1986). We need go no further than the definitive analysis of Federal District Judge Kerr, defining the appropriate answer in *Doran v. Imeson Aviation, Inc.*, 419 F.Supp. 586, 588 (D.Wyo.1976):

> "Since Doran was not a licensed real estate broker in the State of Wyoming, the contract between Doran and Imeson was void and any actions taken by Doran to sell the business were unlawful and Doran is prevented from bringing this action for his commission under the laws of Wyoming."

The majority completely misrepresent the essential purpose and function of the residential broker when the unqualified out-of-state salesman (journeyman peddler in colloquial terminology) involves himself with a Wyoming sale of Wyoming real estate. It is a fundamental principle of the real estate industry that the licensed in-state broker is required in order to afford protection to the public against the uncontrolled conduct of the nonresident. This "captain of the ship" or responsible-licensee status is emplaced in the law to maintain a state-certificated entity with operational and financial responsibility for the transaction. Merely co-execution of the listing agreement will not legitimatize the nonperformance of the regulatory requirements implicit and explicit in Wyoming statutes, § 33–28–101, W.S.1977, and the regulations adopted in accordance therewith by the Wyoming Real Estate Commission. Swearingen's recognition of the responsible Wyoming broker principle is demonstrated by his nominal compliance in associating with the Wyoming broker. Unfortunately, as the record re-flects, that relationship, in operation, was only nominal.

> "Real estate brokers and salesmen are licensed by the State of Wyoming and required to meet high standards of honesty, integrity, trustworthiness and competency. Theirs is a regulated profession. Failure to satisfy those standards is ground for suspension or revocation of a real estate broker's or salesperson's license. An act licensing real estate agents must be construed in the light of an obvious purpose of protecting the public in the handling of important and valuable transactions relating to real property." *Hagar v. Mobley*, Wyo., 638 P.2d 127, 136 (1981).

What is evidenced here is the conduct of the Wyoming real estate business by an unlicensed person situated and resident out of the state. Contrary to what the majority suggest, the reciprocal arrangement is not permitted in any other state where the legislature has provided a real estate salesperson licensing act. See, for example, C.R.S.1973, Art. 61, and particularly § 12–61–107 providing for a nonresident license with defined conditions including irrevocable consent to service of process.

I respectfully dissent.